JUSTICE COTTER
delivered the Opinion of the Court.
¶ 1 J anice Christofferson (J anice) brought this action against the City of Great Falls (City or GF) in the Montana Eighth Judicial District Court to recover damages for personal injury and the wrongful death of her husband, Ron Christofferson (Ron). The jury returned a verdict for the City and the District Court entered judgment on the verdict. Janice appeals from various evidentiary rulings by the District Court and from the judgment. We affirm.
ISSUES
¶2 Janice presents the following issues on appeal:
¶3 1. Did the District Court err in permitting the City’s expert to render an opinion based on medical articles that were not applicable to the facts of the case?
2. Did the District Court err in permitting the City’s expert to testify from a medical article the existence of which he had previously denied and from articles that had not been disclosed?
3. Did the District Court err in permitting paramedic, Kendall Neff, to estimate the time lapse from arrival of the ambulance to intubation based on “habit”?
4. Did the District Court err in refusing to instruct the jury on concurring, independent causes, which was a central theory of Janice’s case?
5. Did the District Court err in refusing to instruct the jury on the burden of proof in the case of a single indivisible injury, which was a central theory of Janice’s case?
6. Did the District Court err in excluding evidence of a cover-up which related to the dispatcher’s credibility?
7. Did the District Court err in excluding testimony of the paramedics regarding the resuscibility of Ron Christofferson at the scene?
8. Did the District Court err in excluding the testimony of Janice’s economist on the value of loss of enjoyment of life?
¶4 By way of its cross-appeal, the City questions whether the District Court erred in deciding that hedonic damages are a proper element of damages in a survival action where the decedent survived, but did not consciously experience a loss of enjoyment of life.
*472 FACTUAL AND PROCEDURAL BACKGROUND
¶5 Shortly after midnight on April 3,1998, Ron Christofferson, who suffered from asthma, experienced a respiratory arrest and collapsed, unable to breathe. His wife, Janice, called 9-1-1 and reported that her husband was “not breathing.” She told the dispatcher that her address was 1909 2nd Street South. Rome Toren and Pam Bramlett, 9-1-1 dispatchers for the City of Great Falls, took the call and dispatched an ambulance. Bramlett erroneously dispatched the ambulance to 1909 2nd Avenue South. Upon arriving at the 2nd Avenue address, the paramedics notified the dispatchers of the mistake. The dispatchers provided the correct address and immediately notified the police of the emergency at the Christofferson’s home. A police officer on patrol near the home arrived seven minutes after the original dispatch. Upon arrival, the police officer and Janice performed CPR until the ambulance arrived.
¶6 The paramedics and the ambulance arrived approximately 12.5 minutes after the original dispatch. At the time the paramedics arrived, they were able to discern a weak pulse and observed that Ron was experiencing a slow heart beat, known as a bradycardia heart rhythm. They also recognized that Ron had vomited and aspirated vomitus into his lungs. Paramedic Pat Songer cleared Ron’s mouth and airway and intubated him. Paramedic Kendall Neff administered the necessary intravenous drugs and handled the heart monitor. Once Ron was stabilized, the paramedics transported him to the hospital. Ron never recovered consciousness and died approximately two and one-half days later.
¶7 Prior to trial, the City admitted its negligence but denied that its negligence caused Ron’s death. A jury trial was held on June 4, 2001. On June 11, 2001, the jury issued a special verdict in which it held that the City’s negligence in dispatching the ambulance to the wrong address was not a substantial factor in causing Ron’s death. The court subsequently entered judgment in favor of the City. Janice appeals.
STANDARD OF REVIEW
¶8 We review a court’s rulings on the admissibility of evidence to determine whether the court abused its discretion. State v. Bingman, 2002 MT 350, ¶ 19, 313 Mont. 376, ¶ 19, 61 P.3d 153, ¶ 19 (citation omitted). Absent a showing of such abuse we will not overturn a district court’s decision. Bingman, ¶ 19. Moreover, “the trial court is vested with great latitude in ruling on the admissibility of expert testimony.” Baldauf v. Arrow Tank and Engineering, 1999 MT 81, ¶ 22, 294 Mont. 107, ¶ 22, 979 P.2d 166, ¶ 22 (emphasis in *473 original)(citation omitted).
¶9 A district court has discretion regarding the instructions it gives or refuses to give to a jury and we will not reverse a district court on the basis of its instructions absent an abuse of discretion. Kiely Const. L.L.C. v. City of Red Lodge, 2002 MT 241, ¶ 62, 312 Mont. 52, ¶ 62, 57 P.3d 836, ¶ 62 (citation omitted). In reviewing whether a particular jury instruction was properly given or refused, we consider the instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial. Kiely, ¶ 62. The party assigning error to a district court’s instruction must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case. Kiely, ¶ 62. See also, Barnes v. City of Thompson Falls, 1999 MT 77, ¶ 8, 294 Mont. 76, ¶ 8, 979 P.2d 1275, ¶ 8 (A trial court is imbued with broad discretion to determine whether or not it will give a proposed instruction to the jury....).
DISCUSSION
¶10 The first two issues we address are whether the District Court erred in permitting the City’s expert to 1) render an opinion based on medical articles that were not applicable to the facts of the case, and 2) testify from a medical article the existence of which he had previously denied and from articles that had not been disclosed.
¶11 We begin our analysis of evidentiary rulings pertaining to expert witness testimony with the recognition that the determination of the qualification of an expert witness is a matter largely within the discretion of the trial judge and such a determination will not be disturbed absent an abuse of discretion. In re Custody of Arneson-Arneson, 2001 MT 242, 307 Mont. 60, 36 P.3d 874. Additionally, we note that expert opinion testimony is subject to several caveats. Under Rule 702, M.R.Evid., opinion evidence from a qualified expert is admissible if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Such expert testimony requires that a proper foundation be established. Expert testimony must also satisfy the relevancy rules set forth in Article IV of the Montana Rules of Evidence. Moreover, full disclosure during discovery -under Rule 26, M.R.Civ.P., is designed “to eliminate surprise and to promote effective cross-examination of expert witnesses.” Hawkins v. Harney, 2003 MT 58, ¶ 21, 314 Mont. 384, ¶ 21, 66 P.3d 305, ¶ 21 (citation omitted).
¶12 In the case before us, both Janice and GF called medical expert witnesses. The parties presented the necessary foundation to qualify *474 these medical professionals as experts in their field and the court accepted both Drs. Knapp and Watson as experts. Janice maintains that Dr. Knapp, GF’s expert witness, based his opinion of Ron’s survivability on medical articles that were irrelevant and/or undisclosed prior to trial. She claims that the disclosed articles relied upon by Knapp were written to address incidents of cardiac, rather than respiratory, arrest. As a result of the inapplicability of the articles’ conclusions, she contends, Knapp gave irrelevant but prejudicial testimony.
¶13 Our review of the voluminous transcript reveals that Janice’s expert, Dr. Watson, provided testimony that directly refuted Knapp’s testimony as to the relevancy and applicability of these articles to Ron’s condition. Moreover, Janice aggressively cross-examined Knapp.
¶14 For a court to abuse its discretion, it must act arbitrarily, without employment of conscientious judgment, or exceed the bounds of reason resulting in substantial injustice. Perdue v. Gagnon Farms, Inc., 2003 MT 47, ¶ 8, 314 Mont. 303, ¶ 8, 65 P.3d 570, ¶ 8. In the case before us, both parties’ expert witnesses presented extensive testimony and both parties were allowed to fully cross-examine the other party’s expert. Additionally, the District Court instructed the jury that they were not bound by either expert’s opinion and that they were to determine the weight to be given to each expert’s testimony based upon the expert’s qualifications and credibility. Under these circumstances, we cannot conclude that the District Court abused its discretion.
¶15 Janice further asserts that Knapp gave testimony based on articles that had not been disclosed prior to trial and that, as a result of this “surprise” testimony, she was unprepared to effectively cross-examine Knapp and was therefore further prejudiced. The trial transcript reveals, however, that Jardee did cross-examine Knapp on one of the undisclosed articles, during which Knapp admitted he had not previously disclosed the existence of the article. Furthermore, Janice effectively attacked both the relevancy of the article and Knapp’s credibility on the basis of the article. As to the second undisclosed article Janice challenges, Janice’s expert testified that he was familiar with the article and discredited its relevancy when he explained that articles deriving from cardiac arrest were not pertinent or applicable to Ron’s condition. Again, under these circumstances, we cannót conclude that the District Court abused its discretion by permitting Knapp to testify from these articles.
¶16 We next determine whether the District Court erred in permitting paramedic Kendall Neff to estimate the time lapse from arrival of the *475 ambulance to intubation based on “habit.” Janice alleges that this testimony was irrelevant, without foundation and clearly prejudicial.
¶17 Two paramedics for the City of Great Falls responded to the 9-1-1 call from Janice-Kendall Neff and Pat Songer. Upon their admittedly delayed arrival, both experienced paramedics proceeded to assess Ron’s condition and begin treating him. The paramedics testified that when two paramedics respond to an emergency call, the required medical duties are divided between them. In Ron’s case, Songer intubated Ron while Neff secured the heart monitor and administered intravenous medication. Songer testified generally that after clearing a patient’s airway, which was required in Ron’s case, it usually takes him less than thirty seconds to intubate. Neff testified that he did not witness Songer intubate Ron, but had no reason to dispute the time it took for Songer to intubate Ron.
¶18 In addition to questioning Neff about Songer’s performance at the Christofferson home, GF questioned Neff generally about the manner in which Neff himself performed various emergency paramedic techniques, including how Neff cleared a patient’s airway and intubated a patient. Janice claims that Neff testified it would have taken between two and five minutes to intubate Ron after arriving at the residence, and that this testimony undercut the testimony of the paramedic who actually performed Ron’s intubation. Our review of the following testimony suggests that this is a slight mischaracterization:
Cross Examination:
GF: And I would also like you to assume that you have someone who has aspirated and you had to perform suction prior to intubation.
Neff: Okay.
GF: And based upon these assumptions, would you agree that from the time you entered the door of the residence until intubation was complete it would take two to five minutes?
Neff: I would guesstimate it would take right around two minutes to do. But that’s with everything else being done, oxygenation, suctioning, bag valve maskings, CPR, yes.
GF: So you would agree, in fact you told me, didn’t you, given these assumptions, that it would take two to five minutes based upon your experience in doing this previously?
Neff: Yes. With me being the only paramedic out there, yes.
GF: And we know that it would have taken a little bit longer with [Ron] because someone has to go back to the ambulance and get the battery-operated suction device, don’t *476 they?
Neff: No. I think actually it would be shorter with [Ron] with two paramedics there.
Re-direct Examination:
Janice: Is that a two-minute estimate, Kendall, based upon one person doing it?
Neff: Yes.
Janice: Of course, that wasn’t the case here, was it?
Neff: No.
¶19 Janice asserts that the District Court abused its discretion by allowing this testimony. We disagree. Even assuming that Janice’s concerns of relevancy and “habit” foundation have merit, given that the jury had the benefit of Songer’s testimony, we conclude that the admission of this testimony does not rise to a reversible abuse of discretion. “An abuse of discretion in an evidentiary ruling does not necessarily constitute reversible error.... ‘Error may not be predicated upon a ruling which admits ... evidence unless a substantial right of the party is affected’ (citation omitted). In other words, ‘a reversal cannot be predicated upon an error in admission of evidence, where the evidence in question was not of such character to have affected the result.’ ” In re A.N., 2000 MT 35, ¶ 55, 298 Mont. 237, ¶ 55, 995 P.2d 427, ¶ 55. From the transcript excerpt quoted above, it appears that Neffs testimony did not contradict or undercut Songer’s testimony in any significant fashion. Moreover, Janice cross-examined Neff, further establishing for the jury that the extended time for intubation was inapplicable to the instant situation involving two paramedics. We therefore conclude that Janice has failed to show that her substantial rights were affected by the admission of this testimony.
¶20 We next address whether the District Court erred in refusing to instruct the jury on concurring, independent causes, which was a central theory of Christofferson’s case.
¶21 Both parties submitted proposed jury instructions for the court’s approval and presentation to the jury. The transcript contains several pages of jury instruction discussions, held outside of the presence of the jury, that took place over multiple days. In one such discussion, Janice offered several alternate jury instructions addressing the concept of concurring, independent causes of Ron’s death. Specifically, her proposed jury instruction No. 10 read:
Except as stated in sub-section (2), the City of Great Falls’ negligent conduct is not a substantial factor in bringing about harm to Ron Christofferson or Jan Christofferson if the harm *477 would have been sustained even if the City of Great Falls had not been negligent.
(2) If two forces are actively operating, one because of the City of Great Falls’ negligence, the other not because of any misconduct on the City of Great Falls’ part, and each of itself is sufficient to bring about the injury to Ron Christofferson or Jan Christofferson, then the City of Great Falls’ negligence may be found to be a substantial factor in bringing the injury about.
¶22 GF challenged this jury instruction, arguing that it was inapplicable and inappropriate under the facts of this case. GF asserted that the language in sub-section (2) of the proposed instruction requires that each force, of the two actively operating forces, had to be independently sufficient to bring about Ron’s death. GF maintained that but for Ron’s pre-existing illness causing a respiratory arrest, the delay of the ambulance did not matter. In other words, without the respiratory arrest, the delay of the ambulance could not have caused any harm; therefore the ambulance delay, by itself, was not sufficient to cause Ron’s death.
¶23 Following several minutes of discussion on this particular proposed instruction, the court asked Janice’s attorney to respond, at which point, the following conversation occurred:
Janice: Know what, Judge, everyone has convinced me. I’m going to withdraw.
Court: You are?
Janice: Yeah.
Court: What are you withdrawing?
Janice: Well, 10 -
Court: Let me just get my list. 10.
Janice: 11, 12.
(Instructions 11 and 12 were simply variations on the theme of Instruction No. 10).
¶24 On appeal, Janice argues that 1) she has no recollection of withdrawing Proposed Instruction No. 10; 2) she thought its offer had been denied; 3) the court reporter’s punctuation made it appear that it had been withdrawn; and 4) if such a withdrawal did occur, it was inadvertent. GF argues on appeal that Janice withdrew the proposed instruction and should not now be allowed to claim she did not. In the alternative, GF argues that, even if not withdrawn, the proposed instruction was still inapplicable and the instruction issued by the District Court was a correct statement of the law.
¶25 The record reflects that Janice did in fact withdraw her Proposed Instruction No. 10. However, even if we assume for the sake of *478 argument that she did not, we cannot read section (2) of the proposed instruction as Janice wants us to do. The plain language of the instruction compels us to conclude that GF’s interpretation is correct. Each of the two forces addressed in this section must, by definition, be “of itself... sufficient” to bring about the harm to Ron. The delay in the arrival of the ambulance, standing alone, would not be sufficient to harm Ron-indeed, the ambulance would not have been needed at all but for Ron’s respiratory arrest. Therefore, the instruction simply does not fit the facts before the jury.
¶26 The District Court did instruct the jury as follows:
City of Great Falls is liable if its negligence was a cause of injury or death to Ron Christofferson or a cause of injury to Jan Christofferson.
The City of Great Falls’ conduct is a cause of Ron Christofferson’s injury or death or a cause of injury to Jan Christofferson if it is a substantial factor in bringing the injury or death about.
We conclude that, given the facts of this case, this was a correct statement of the law. As noted above, we will not reverse if the jury instructions in their entirety state the applicable law of the case. Kiely, ¶ 62.
¶27 The next issue before us is whether the District Court erred in refusing to instruct on the burden of proof in the case of a single indivisible injury, which was a central theory of Christofferson’s case.
¶28 Janice argues that the District Court abused its discretion when it refused to give two jury instructions shifting the burden of proof from her to GF upon her prima facie showing that GF’s negligence was a substantial factor in causing harm to Ron. As we indicated above, a district court has broad discretion regarding the instructions it gives or refuses to give to a jury and we will not reverse a court on the basis of its instructions absent an abuse of discretion. Kiely, ¶ 62. Moreover, an abuse of discretion is not reversible error absent prejudice. In re A.N., ¶ 55.
¶29 The requested and denied jury instructions were as follows:
Proposed Instruction No. 14
If you find that the negligence of City of Great Falls was a substantial factor in bringing about the injury or death to Ron Christofferson, and if you find that such negligence has contributed to the confused situation that makes it difficult to prove whether the injury or death were caused by City of Great Falls’ negligence or by Ron Christofferson’s preexisting condition, then the City of Great Falls is liable for the entire amount of damages.
*479 Proposed Instruction No. 15
Where a preexisting condition exists which has been aggravated by another’s negligence, it is your duty, if possible, to apportion the damage between that caused by the preexisting condition and that cause by the negligence. But if you find that the evidence does not permit such an apportionment, then the City of Great Falls is liable for the entire amount of the damage.
These instructions went to damages and were dependent upon the jury first finding that GF’s negligence was a substantial factor in Ron’s injury and death. Because the jury found that GF’s negligence was not a substantial factor in Ron’s death, the court’s refusal to give the jury instructions did not prejudice Janice. See Stenberg v. Neel (1980), 188 Mont. 333, 339, 613 P.2d 1007, 1011 (reversible error cannot be predicated on damage instructions when the jury’s verdict is such that the jury does not reach the issue of damages). We therefore affirm the District Court on this issue.
¶30 We next address whether the District Court erred in excluding evidence of a cover-up which related to the dispatcher’s credibility.
¶31 Dispatcher Rorrie Toren took Janice’s 9-1-1 call the night her husband fell ill. He testified that he correctly relayed the address to Dispatcher Pam Bramlett but Bramlett inadvertently conveyed the wrong address to emergency responders. Toren, who was the shift supervisor that night, testified in the presence of the jury that he did not report this error to his supervisor, did not prepare a written report of the error, and did not preserve the tape of the 9-1-1 call.
¶32 Janice testified that she did not learn the reason for the ambulance’s delay until several months after Ron’s death. She now alleges that the City engaged in a “cover-up” of this event. She argues that the District Court abused its discretion when it granted a motion in limine, following Toren’s above-described testimony, prohibiting her from “eliciting any testimony or arguing to the jury that the City, following the dispatch of the ambulance to the wrong address, made no report, made no report to the supervisor, that [Toren’s supervisor] took no action, or that no action was taken against Pam Bramlett, who was the individual that made the wrong dispatch.”
¶33 In support of its motion in limine, GF argued that such testimony was irrelevant. It maintained that the purpose of this case was to determine whether GF’s admitted negligence in dispatching the ambulance to the wrong address caused Ron’s death, and that a dispatcher’s failure to generate a report of the error after it occurred was irrelevant to causation. Moreover, GF argued that such testimony was inflammatory and designed to imply that the City did not care *480 enough about Janice or Ron Christofferson to generate a report of their error. Janice countered that such testimony went to Toren’s credibility and, therefore, was relevant under Rule 401, M.R.Evid.
¶34 Without explaining its decision, the District Court granted the City’s motion in limine. Upon review of the transcript and the parties’ arguments, we fail to see the relevancy of the “cover-up” testimony. Relevant evidence is defined at Rule 401, M.R.Evid., as that"... having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Given that GF admitted its negligence, Toren’s failure to report the address snafu to his supervisor does not make the City’s negligence or liability for Ron’s death any more or less probable. More to the point, given the admission of negligence, we cannot conclude that the credibility of the dispatcher, even if damaged by the revelation, would have any bearing on the case, nor has Janice informed us how the impairment of his credibility would matter. Therefore, we cannot conclude that the District Court’s ruling on the motion in limine was an abuse of discretion.
¶35 The seventh issue before us is whether the District Court erred in excluding the testimony of the paramedics regarding the resuscibility of Ron Christofferson at the scene.
¶36 In their depositions, both Neff and Songer testified that had they been correctly dispatched, they would have arrived at the Christofferson home and begun resuscibility procedures on Ron several minutes earlier, thus enhancing his chances of survival. Prior to trial, GF moved in limine to exclude this testimony. The City argued that Ron’s prospects of survival are properly a subject for expert testimony and that such testimony by Neff and Songer lacked foundation and was speculative. Janice, on the other hand, argued that the paramedics were entitled to testify to these matters as lay witnesses under Rule 701, M.R.Evid.
¶37 Rule 701, M.R.Evid., provides:
Opinion testimony by lay witnesses.
If the witness is not testifying as an expert, the witness’ testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness’ testimony or the determination of a fact in issue.
¶38 Rule 702, M.R.Evid., on the other hand, addresses expert testimony:
Testimony by experts.
If scientific, technical, or other specialized knowledge will assist *481 the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
¶39 In the case before us, we must decide whether the District Court abused its discretion when it determined that the paramedics would be precluded from offering essentially lay medical opinions.
¶40 There can be little question that an opinion to the effect that the ambulance’s delay greatly reduced Ron’s resuscibility chances is relevant to the primary issue of the case, and thereby satisfies Rule 701(b), M.R.Evid. The question, therefore, is whether such an opinion may be given by a lay witness, or must be presented only by an expert witness.
¶41 Janice argues that Onstad v. Payless Shoesource, 2000 MT 230, 301 Mont. 259, 9 P.3d 38, and Hislop v. Cady (1993), 261 Mont. 243, 862 P.2d 388, support her position, while GF argues that these cases are distinguishable.
¶42 In Onstad, a Payless Shoesource employee was physically and sexually assaulted by a stranger who had previously “flashed” other female employees at the same store and at another Payless store location. Onstad sued Payless, alleging it was negligent in not warning her based on these prior incidents, and in not providing her with a safe and secure workplace. Onstad presented the testimony of three police officers who investigated the assault. Payless challenged the officers’ opinions as to the efficacy of security precautions taken in the particular Payless store, and the predictability of an escalation in severity of a sexual offender’s actions. Payless claimed that such testimony was inadmissible lay testimony. Onstad, ¶ 36.
¶43 Payless argued that under Massman v. City of Helena (1989), 237 Mont. 234, 773 P.2d 1206, and Rocky Mountain Ent. v. Pierce Flooring (1997), 286 Mont. 282, 951 P.2d 1326, lay witnesses may not give opinions on topics requiring specialized skill or training. In Massman, an assistant fire chief was questioned about the effect of certain firefighting methods used to contain the fire at issue. The trial court denied introduction of the testimony, ruling that such testimony constituted expert testimony, not lay witness testimony. This Court affirmed the trial court, stating:
His opinion, about the most effective methods for combating such a fire, was based on that specialized, technical knowledge obtained from his fire training and work as an assistant fire chief. As such, the substance of his opinion constituted an expert opinion rather than a lay witness opinion.
*482 ¶44 In Rocky Mountain, the District Court precluded the testimony of a business owner who, after being forced to close his business, attempted to testify as a lay witness as to his business’ future lost profits. The District Court held that projecting lost profits required the skills of an expert, and that the company owner had produced no evidence of having the specialized skill and training of an economist. Rocky Mountain, 286 Mont. at 292, 951 P.2d at 1332. We affirmed the District Court.
¶45 The trial court in Onstad, after weighing the arguments presented by both parties, ultimately concluded that the officers’ lay testimony was admissible, noting that it “sprang from their work and experience as police officers.” Onstad, ¶ 41. One officer testified that it was “common knowledge” that employee safety increases when two employees are present rather than just one. Onstad, ¶ 41. The other officers testified that a police officer would not have advised a crime victim that the assaulter’s previous “flashing” incidents indicated he was merely a “harmless pervert,” as alleged by Payless. Onstad, ¶ 41. Lastly, the District Court found significance in the fact that Payless had raised the matters at issue in its opening statement, thus opening the door. Onstad, ¶ 42. Payless appealed and this Court affirmed the trial court. We observed that the District Court had responded to Payless’ objections in a “careful and considered fashion” and had correctly attributed significance to Payless’ raising of the issue in its opening statement. As a result, this Court concluded that the trial court did not abuse its discretion in admitting the lay testimony. Onstad, ¶ 42.
¶46 Jardee also relies on Hislop, in which a police officer testified at trial that the cause of an accident in which a pedestrian was killed was the fact that he was wearing dark clothes and standing in the highway in the middle of the night, and therefore not visible to oncoming traffic. On appeal, relying on Hart-Anderson v. Hauck (1989), 239 Mont. 444, 781 P.2d 1116, we held that based upon the officer’s “extensive experience in investigation,” he was “properly qualified through training and experience to testify as to his opinion regarding the cause of the accident.” Hislop, 261 Mont. at 249, 862 P.2d at 392. In Hart-Anderson, we similarly concluded that an officer’s testimony regarding the cause of an automobile accident was admissible based upon the officer’s extensive experience as an investigator of “several hundred automobile accidents.” Hart-Anderson, 239 Mont. at 448-49, 781 P.2d at 1118-19.
¶47 While we did not expressly state in either Hislop or Hart-Anderson that the officers’ testimony was properly admitted as expert *483 testimony -under Rule 702, as opposed to lay testimony under Rule 701, the language of those cases certainly supports that inference. Then, in 1997, we confirmed that such opinion testimony as to causation from a police officer constitutes expert testimony, affirming the district court’s conclusion that, given the officer’s extensive experience and training, she qualified as an expert under Rule 702, M.R.Evid. State v. Gregoroff (1997), 287 Mont. 1, 951 P.2d 578. We clarified that a law enforcement officer may offer an expert opinion about the cause of an accident, as long as a sufficient foundation for the opinion is offered under Rule 702.
¶48 More recently, in State v. Nobach, 2002 MT 91, 309 Mont. 342, 46 P.3d 618, we held that whether a defendant’s ability to drive safely was diminished as a result of his consumption of drugs required expert opinion testimony. Nobach, ¶ 22. We rejected the police officer’s lay opinion to the effect that the defendant had been impaired by drug consumption, and concluded that the district court had abused its discretion in admitting his lay testimony on this issue. We stated:
Moreover, we are not persuaded that lay people are sufficiently knowledgeable about common symptoms of drug consumption, much less the effects of drug consumption on a person’s ability to drive a motor vehicle safely, to offer lay opinion testimony on those subjects, based on personal observations, under Rule 701. In addition, [the officer’s] opinions that Nobach’s ability to drive safely was diminished by the consumption of drugs and as to the effect of two depressants purportedly were based on his training and experience, subjects which generally relate to expert opinion testimony. See Rule 702, M.R.Evid.
Nobach, ¶ 17. Significantly, we further concluded that there was insufficient foundation for the acceptance of the officer’s opinion as to drug impairment, because he did not have the training necessary to testify as to the effects of particular drug consumption. Thus, the opinion would not qualify as an expert opinion under Rule 702, and it was therefore error for the district court to admit the evidence. Nobach, ¶ 26.
¶49 Here, plaintiffs argue that the paramedics should have been permitted to offer lay testimony as to the prospects of success of an earlier intubation of Ron, had the ambulance been properly dispatched. Such proposed testimony clearly extends beyond the mens’ observations at the scene or a description of their actions, and into the realm of expert medical opinion. While in Onstad, the officers were not offering scientific opinions, here the paramedics were being called upon to do just that. Our case law clearly requires that a foundation *484 establishing the expertise of a witness to give such opinions must first be laid, pursuant to Rule 702. We conclude that the opinions Neff and Songer gave as to the likelihood of resuscibility had they arrived earlier could not be based on common knowledge, general experience or scene observation, but rather required extensive specialized training and experience. As a result, their testimony fell within the realm of expert testimony requiring foundation, and preclusion of it as lay opinion was not an abuse of discretion.
¶50 The last issues we address concern damages. Janice maintains the District Court erred in excluding the testimony of Christofferson’s economist on the value of loss of enjoyment of life. GF argues on cross-appeal that the District Court erred in deciding that hedonic damages are a proper element of damages in a survival action where the decedent survived, but did not consciously experience a loss of enjoyment of life.
¶51 These final issues relate to the damages that would have been awarded to Janice had the jury determined that GF’s negligence was a substantial factor in Ron’s death. Because the jury did not make such a determination, these issues are moot.
CONCLUSION
¶52 Having concluded that the District Court did not abuse its discretion in deciding the foregoing issues, we affirm the District Court.
CHIEF JUSTICE GRAY, JUSTICES REGNIER, LEAPHART, WARNER and RICE concur.