No. 04-226

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 211N

THIEL'S WELDING, INC.,

   Plaintiff and Appellant,

  v.

VERMEER OF WASHINGTON, INC.,
a Washington corporation, d/b/a VERMEER
SALES & SERVICE MONTANA AND
VERMEER MANUFACTURING COMPANY,
an Iowa corporation,

   Defendants and Respondents.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
       In and for the County of Yellowstone, Cause No. DV 00-949,
       The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

     Kenneth D. Peterson, Peterson and Schofield, Billings, Montana

   For Respondent Vermeer of Washington, Inc.:

     Donald R. Herndon, Herndon, Sweeney & Halverson, P.C., Billings,
     Montana

     Geoffrey R. Keller, Matovich & Keller, Billings, Montana

   For Respondent Vermeer Manufacturing Company:

     Calvin J. Stacey, Stacey and Funyak, Billings, Montana

           Submitted on Briefs: March 8, 2005
              Decided: August 30, 2005

Filed:

    _____
           Clerk

Justice John Warner delivered the Opinion of the Court.

1

¶1      Pursuant to § I, Para. 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2      Thiel's Welding, Inc., appeals from an Order of the Thirteenth Judicial District Court, County of Yellowstone, denying Thiel a new trial.  We affirm.

¶3      The issues are restated on appeal as follows:

¶4      1.  Did the District Court err when it denied Thiel's Motions to Compel discovery?

¶5      2.  Did the District Court err in refusing to admit into evidence a letter from Vermeer Manufacturing to Thiel's attorney, as it constituted an offer of compromise?

¶6      3.  Did the District Court err in limiting testimony of the witnesses Seth Shumaker, Kathy Thiel and Bob Roberts?

¶7      4.  Did the District Court err in its jury instructions?

¶8      5.  Was there substantial credible evidence to support the jury's finding that Vermeer Sales had not "sold" the D80 to Thiel?

## FACTUAL AND PROCEDURAL BACKGROUND

¶9      At the time of trial, Thiel's Welding, Inc. ("Thiel"), which is owned and operated by John Thiel and his wife Kathy, had been in the pipeline construction business for almost 30 years.  In September 2000, Thiel filed suit against Vermeer Sales and Service of Montana ("Vermeer Sales"), and Vermeer Manufacturing Company ("Vermeer Manufacturing").  Thiel alleged it purchased a D80 horizontal boring machine manufactured by Vermeer

Manufacturing from Vermeer Sales to use on a contract it had with Cenex to lay 19 miles of pipe for petroleum transmission. It alleged claims for relief based on negligent misrepresentation, constructive fraud, breach of contract and breach of warranties, in connection with the acquisition and use of the D80 boring machine.

¶10 John Thiel has been a long-time customer of Vermeer Sales and is acquainted with Bob Roberts ("Roberts"), the principal owner of Vermeer Sales. Around the time Thiel acquired the Cenex contract, Roberts and Thiel discussed the possibility that Thiel do its own horizontal boring on the Cenex project using a new Vermeer Manufacturing product, the D80 horizontal boring machine. Thiel had not been involved in the business of horizontal boring prior to that time. Thiel was assured by Vermeer Sales that the D80 was capable of completing the bores required by the Cenex contract, including one of some 1,200 feet under the Yellowstone River. The Yellowstone River crossing was known to be the longest and most difficult of the eight underground bores required by the Cenex contract. Vermeer Sales agreed to provide Thiel with a D80 for the purpose of completing the boring contract. Vermeer Sales ordered a D80 from Vermeer Manufacturing. Thiel later paid Vermeer Sales $50,000 for use of the machine. The parties disputed whether the payment was intended as a down payment on the "sale" of the D80 to Thiel or whether Thiel was simply going to rent, or "demo," the D80 for the purpose of testing it on the job before actually purchasing it. The jury ultimately found that the machine was not sold by Vermeer Sales to Thiel.

¶11 The machine was delivered to Vermeer Sales in November 1998. Roberts, acting for Vermeer Sales, made arrangements to have a Vermeer Manufacturing factory instructor present when the machine arrived so that he could instruct Thiel how to operate it on some

3

of the less difficult bores required by the contract. However, even though work was originally to begin in November, 1998, Thiel did not start on the project until January 1999, at which time the factory instructor was not available to provide training. However, Vermeer Sales did send one of its salesmen, who was experienced in horizontal boring, to instruct John Thiel on how to use the machine on several of the easier bores. John Thiel, acting for his company, operated the machine.

¶12    John Thiel saved the Yellowstone River bore for last, even though he told Roberts he would  attempt it as soon as he completed a few of the easier bores. Thiel twice attempted the Yellowstone River bore. The measure of a successful bore is whether one is able to pull the pipe back through the bore hole. In this case, Thiel failed to successfully pull the 10 inch pipe back through the bore hole. Thiel eventually left the D80 on the banks of the Yellowstone River. Two representatives from Vermeer Manufacturing attempted the Yellowstone River bore after Thiel abandoned the project, and they too were unable to pull the pipe through the bore hole. Nevertheless, at trial Vermeer Sales and Vermeer Manufacturing maintained that the D80 is capable of completing the Yellowstone River bore and the problem was that Thiel made so many mistakes in planning the bore and in operating the machine that the project failed. Vermeer Sales eventually sold the machine to another customer. The evidence at trial was that the machine performed satisfactorily for the new owner.

¶13    Thiel filed suit against Vermeer Sales and Vermeer Manufacturing alleging breach of contract, negligent misrepresentation, constructive fraud, and breach of warranties. Thiel withdrew the claim for breach of contract prior to trial.

¶14 Thiel filed two separate pre-trial motions to compel discovery from Vermeer Manufacturing seeking information concerning to whom other D80 boring machines had been sold. Both were denied. The case proceeded to jury trial. By special verdict the jury found that there was not a sale of the D80 boring machine from Vermeer Sales to Thiel, neither defendant had constructively defrauded Thiel, neither defendant was negligent, and neither defendant negligently misrepresented the D80 to Thiel. The jury also found that Thiel was not liable to Vermeer sales based on its counter-claim for unjust enrichment. Thiel moved for a new trial. The motion was denied. This appeal followed.

## STANDARDS OF REVIEW

¶15 Denial of a motion to compel discovery is a district court ruling to which this Court applies an abuse of discretion standard. *See e.g.*, *State v. Warclub,* 2005 MT 149, *¶* 20, 327 Mont. 352, *¶* 20, 114 P.3d 254, *¶* 20; *Lynch v. Reed* (1997)*,* 284 Mont. 321, 326, 944 P.2d 218, 221; *Montana Rail Link v. Byard* (1993), 260 Mont. 331, 337, 860 P.2d 121, 125. "A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *State v. Riggs*, 2005 MT 124, ¶ 18, 327 Mont. 196, ¶ 18, 113 P.3d 281, ¶ 18.

¶16 The standard of review for a district court's denial of a motion for a new trial is also abuse of discretion. *Warclub, ¶* 20; *State v. Mummey* (1994), 264 Mont. 272, 276, 871 P.2d 868, 870.

¶17 Trial courts have broad discretion to determine whether evidence is relevant and admissible and, absent a showing of abuse of discretion, these determinations will not be overturned. *State v. Strauss,* 2003 MT 195, ¶ 18, 317 Mont. 1, ¶ 18, 74 P.3d 1052, ¶ 18.

5

¶18    We review jury instructions to determine whether the instructions as a whole fully and fairly instruct the jury on the applicable law. *State v. Pittman,* 2005 MT 70, ¶ 30, 326 Mont. 324, ¶ 30, 109 P.3d 237, ¶ 30.  A district court has broad discretion in formulating jury instructions, and our standard of review is whether the court abused that discretion. *Pittman*, ¶ 30.

¶19    Our standard of review of a jury's finding of fact is whether there was substantial evidence to support the finding. *Onstad v. Payless Shoesource*, 2000 MT 230, ¶ 56, 301 Mont. 259, ¶ 56, 9 P.3d 38, ¶ 56; *Cartwright v. Equitable Life Assur.* (1996), 276 Mont. 1, 23, 914 P.2d 976, 990.  In our review of jury verdicts in civil cases, the prevailing party is entitled to any reasonable inference that can be drawn from the facts which are proven and we do not decide whether the verdict was correct or whether the jury made the right decision. *Onstad*, ¶ 56.  We will not lightly overturn the verdict of a finder of fact, especially a jury. We do not disturb a jury's findings unless they are inherently impossible to believe; and that the test of substantial credible evidence allows for reversal only if there is an absence of probative facts to support the verdict.  *Onstad*, ¶ 56; *Sandman v. Farmers Ins. Exchange,* 1998 MT 286, ¶ 41, 291 Mont. 456, ¶ 41, 969 P.2d 277, ¶ 41.

## DISCUSSION

### ISSUE ONE

¶20    **Did the District Court err when it denied Thiel's Motions to Compel discovery?**

¶21    Thiel sought to learn by interrogatories information about other D80 machines that were manufactured and sold by Vermeer Manufacturing, including the names and addresses of the purchasers.  Vermeer Manufacturing, in response, gave some information but objected

6

to the portions of the interrogatories which sought information regarding buyers and end users of other D80 machines. It claimed this information is confidential and its disclosure would cause irreparable harm to its business. The District Court denied Thiel's motions to require that this information be supplied. On appeal, Thiel argues that the District Court deprived Thiel of the opportunity for full investigation and full discovery when it denied its Motions to Compel. Thiel claims that information concerning other machines could have led to discovery of relevant information about the performance of the particular D80 machine in question.

¶22 In denying Thiel's motions, the District Court stated that since Thiel's complaint was based on the theories of misrepresentation, constructive fraud, breach of contract and breach of warranties, it did not appear that the information sought was reasonably calculated to lead to the discovery of admissible evidence.

¶23 The District Court has inherent discretionary power to control discovery based on its authority to control trial administration. The trial judge will only be reversed when her judgment may materially affect the substantial rights of the appellant and allow a possible miscarriage of justice. *Henricksen v. State*, 2004 MT 20, ¶ 35, 319 Mont. 307, ¶ 35, 84 P.3d 38, ¶ 35; *Anderson v. Werner Enterprises, Inc.*, 1998 MT 333, ¶ 13, 292 Mont. 284, ¶ 13, 972 P.2d 806, ¶ 13; *Matter of H.D.* (1992), 256 Mont.70, 77, 844 P.2d 114, 119. The party claiming error in the district court's discovery rulings must show prejudice. *Henricksen*, ¶ 35; *Anderson*, ¶ 13.

¶24 Thiel has not pointed out how contacting the owners of other D80 machines could reasonably have lead to relevant information that would have assisted it in establishing its

7

claims. Nor does it argue that it was unable to find and question the owners and operators of other machines. To the contrary, Thiel hired and called at trial an expert witness who stated he was familiar with Vermeer boring machines, including the D80, and has used them in the field. Thus, it appears from the record that Thiel was able to prosecute its claims in an informed manner even though its Motions to Compel were denied. Also, Thiel's expert witness told the jury that the Vermeer D80 boring machine was capable of successfully completing the bore under the Yellowstone River.

¶25 Thiel's argument was that the particular machine in question was not capable of boring under the Yellowstone river. He supported this with his own opinion based on his familiarity with the machine in question and the fact that employees of Vermeer Sales could not get the job done with that particular machine. Under these circumstances we conclude that there was neither a miscarriage of justice nor has Thiel shown prejudice requiring a new trial caused by the order denying its motions to compel.

¶26 **Did the District Court err in refusing to admit into evidence a letter from Vermeer Manufacturing to Thiel's Attorney, as it constituted an offer of compromise?**

¶27 In order to establish its breach of warranty claims, Thiel sought to prove that Vermeer Sales sold the D80 to Thiel. Thiel argues that the District Court erred when it sustained an objection by Vermeer Sales to Thiel's Exhibit 25, which was a letter from Vermeer Manufacturing's corporate counsel to Thiel's attorney offering to settle all of Thiel's claims against both defendants. In this letter, Vermeer Manufacturing's in-house counsel states, in discussing the facts as he viewed them, that Vermeer Sales accepted $50,000 from Thiel in partial payment for the sale of the D80. The District Court refused to admit the letter, concluding that it constituted hearsay; it was irrelevant because the issue of a sale was between Vermeer Sales and Thiel, not Vermeer Manufacturing and Thiel; and because offers of compromise are not admissible to prove liability under Rule 408, M.R.Evid. Rule 408 provides that offers of compromise are not admissible to prove liability.

¶28 Thiel argues that the letter should have been admitted because it was an offer to pay expenses, which is not prohibited by Rule 409, M.R.Evid, and it was an admission against interest under Rule 801(d)(2)(C)-(D), M.R.Evid., and thus did not constitute hearsay.

¶29 The reason the letter in question was offered by Thiel was to prove that there was a sale of the machine, which was a part of its liability case. The letter was, however, a written offer to compromise the disputes between all three parties on the basis stated therein. The letter made statements of fact, discussed dealings between the parties, made a proposal to resolve all disputes between the three parties, and then ended with a statement that the letter

is an offer in compromise of a disputed settlement and in no way constitutes an admission of liability or responsibility. Each statement of fact in the letter was a part of the author's view of what happened. Each statement of what happened was included for the purpose of setting the stage for the offer of compromise. The statements concerning a down payment and a purchase were an integral part of the proposed compromise of the dispute. It was not an abuse of discretion for the District Court to conclude that the letter was not admissible under Rule 408, M.R.Evid.

## ISSUE THREE

¶30 **Did the District Court err in limiting testimony of the witnesses Seth Shumaker, Kathy Thiel and Bob Roberts?**

¶31 Thiel argues that the District Court erred in excluding testimony from one Seth Schumaker, an attorney that represented Thiel after this dispute had arisen, concerning telephone conversations he had with officers from Vermeer Manufacturing regarding whether a sale of the D80 to Thiel had occurred. Thiel offered the testimony as an alternative to Exhibit 25, the letter from Vermeer Manufacturing's counsel discussed above in Issue Two. The testimony was a part of Thiel's attempt to prove that Vermeer Sales had admitted it had sold the D80 to Thiel. Each of the offered conversations took place during settlement negotiations between Vermeer Manufacturing and Thiel. After hearing Thiel's offers of proof in response to the Defendants' objections to the testimony, the District Court excluded these statements because they were hearsay, because Vermeer Manufacturing representatives could not make admissions against interest for Vermeer Sales, and the conversations were all a part of the settlement attempts concerning the claims of the parties.

10

¶32    The record reveals that the District Court was correct in its conclusion that all of these conversations were an integral part of attempts by Thiel's attorney to settle the issues that ultimately led to this litigation. The District Court did not abuse its discretion in excluding them pursuant to Rule 408, M.R.Evid.

¶33    Thiel also argues that the District Court erred in its refusal to allow Kathy Thiel to testify about a conversation she had with an official of Vermeer Manufacturing concerning an offer to pay a part of the cost of an additional attempt to complete the bore under the Yellowstone River. Thiel claims that $15,000 expended for labor in this later attempt is a part of its damages. The District Court admitted an exhibit, and allowed argument that Thiel was damaged to that amount. However, it excluded the conversation as part of an offer of compromise. Thiel's counsel made it very clear that he made no claim that his client and Vermeer Manufacturing had entered into a contract to pay the $15,000 in labor costs discussed in the excluded telephone conversation. The conversation was a part of compromise negotiations, and its exclusion was within the discretion of the District Court. Rule 408, M.R.Evid.

¶34    Finally, Thiel argues that the District Court erred in sustaining an objection to Thiel's attempt on cross-examination to illicit testimony from Roberts that when he assured Thiel that the D80 was capable of boring the Yellowstone River, he was offering a "guarantee" that it could do the job; that is, he implied that he was giving an assurance of the quality of the product with an offer to reimburse Thiel if it did not perform. Initially, the District Court allowed Thiel to ask Roberts to read the definition of "guarantee" to the jury. However,

11

upon a renewed objection from the Defendants, the District Court sustained the objection, struck the testimony and instructed the jury that they were not to consider the dictionary definition in their deliberations. The District Court reasoned that Thiel could not use the definition to argue to the jury because it was not a legal definition and Thiel could only argue based on the law. Thiel now argues that he was prejudiced by the District Court's ruling.

¶35 When reviewing a district court's evidentiary ruling our standard of review is whether the court abused its discretion. *Payne v. Knutson,* 2004 MT 271, ¶ 20, 323 Mont. 165, ¶ 20, 99 P.3d 200, ¶ 20; *Kiely Constr. L.L.C. v. City of Red Lodge,* 2002 MT 241, ¶ 92, 312 Mont. 52, ¶ 92, 57 P.3d 836, ¶ 92. The district court has broad discretion in determining the admissibility of evidence. *Payne,* ¶ 20*; Kiely Constr.,* ¶ 92. We will not reverse the district court unless the error be of such character to have affected the result. *Payne,* ¶ 20*; Christofferson v. City of Great Falls,* 2003 MT 189, ¶ 19, 316 Mont. 469, ¶ 19, 74 P.3d 1021, ¶ 19. Furthermore, deciding whether the prejudicial effect of the evidence outweighs its probative value is similarly within the district court's discretion. *Payne,* ¶ 20*; State v. Detonancour,* 2001 MT 213, ¶ 31, 306 Mont. 389, ¶ 31, 34 P.3d 487, ¶ 31.

¶36 Roberts admitted on cross-examination that he assured Thiel that the D80 was capable of boring the Yellowstone River. However, he said he did not use the term "guarantee." This admission was enough for Thiel to make his point. Based on these facts, it is clear to us that the District Court did not act arbitrarily without employing conscientious judgment in making its ruling. Thiel was able to argue its theories of liability based on the evidence of the actual conversations between it and the Defendants. Thus, we cannot find that the

12

District Court's decision to limit its cross-examination of Roberts was prejudicial. Therefore, we conclude the District Court did not abuse its discretion in striking the dictionary definition of the word "guarantee" from the witness' testimony.

## ISSUE FOUR

¶37 **Did the District Court err in its jury instructions?**

¶38 A district court has discretion regarding the instructions it gives or refuses to give to a jury and we will not reverse a district court on the basis of its instructions absent an abuse of discretion. *Christofferson v. City of Great Falls,* 2003 MT 189, ¶ 9, 316 Mont. 469, ¶ 9, 74 P.3d 1021, ¶ 9. "In reviewing whether a particular jury instruction was properly given or refused, we consider the instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial." *Christofferson*, ¶ 9. "The party assigning error to a district court's instruction must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case." *Christofferson*, ¶ 9.

¶39 Thiel first argues that the District Court erred in not giving Thiel's offered instructions 2S, defining a sale; 12, concerning responsibility for causing damages; 17, concerning formation of a contract; 20A, concerning express warranty; 24, concerning implied warranty; 25, concerning supplying false information; and 27A and 29 concerning damages. It then goes on to argue that the District Court erred in giving instructions 13, defining a sale; 23, concerning a buyer's rejection of the goods; and 33, concerning Vermeer Sales' counter claim based on unjust enrichment.

¶40 Thiel's offered instruction 2S is similar to instruction 13 given by the District Court.

13

2S contains additional language that a present sale is one that is accomplished by the making of a contract. The District Court determined that this additional language was not necessary and could add confusion because there was no claim based on contract. The Court did instruct the jury on what is necessary to constitute a sale in its instructions 14 and 15, which included, in essence, the language that Thiel complains was omitted by not giving its offered instruction 2S. The jury was fairly instructed on what constitutes a sale, and the District Court did not abuse its discretion in determining that the additional language of Thiel's offered instruction 2S was not necessary.

¶41 Thiel's offered instruction 12, which says that a person cannot avoid liability by claiming that another helped cause the damages, attempted to raise a straw man and was properly rejected by the District Court. Neither of the defendants blamed the other for any damage suffered by Thiel.

¶42 The subject of express and implied warranties was completely and fairly addressed in the Court's instructions number 16 through 21, inclusive. Thiel makes no complaint about these instructions. The District Court did not abuse its discretion in rejecting Thiel's offered instructions 20A and 24.

¶43 Thiel's offered instruction 25 concerns liability for supplying false information in a business context. Thiel presents no argument in its brief concerning why the District Court should be reversed for not giving this instruction. Rule 23(a)(4), M.R.App.P., requires that an appellant present a concise, cohesive argument which "contain[s] the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and pages of the record relied on." *In re Marriage of McMahon,* 2002

14

MT 198, ¶ 6, 311 Mont. 175, ¶ 6, 53 P.3d 1266, ¶ 6. This Court has repeatedly held that we will not consider unsupported issues or arguments. *State v. Kearney*, 2005 MT 171, ¶ 16, 327 Mont. 485, ¶ 16, 115 P.3d 214, ¶ 16; *McMahon,* ¶ 6; *In re Custody of Krause,* 2001 MT 37, ¶ 32, 304 Mont. 202, ¶ 32, 19 P.3d 811, ¶ 32. Similarly, this Court is under no obligation to locate authorities or formulate arguments for a party in support of positions taken on appeal. *McMahon,* ¶ 6; *Kearney*, ¶ 16.

¶44    Also, the jury was fairly instructed on Thiel's constructive fraud claim in instruction 24, and in instruction 27 concerning negligent misrepresentation. Thiel complains about neither of these instructions.

¶45    Thiel's offered instructions 27A and 29 concern damages. The jury did not reach the issue of damages and we affirm the verdict. It is not necessary to discuss the District Court's rejection of these instructions.

¶46    The District Court's instruction 23, to which Thiel objects, merely states that it was not a sale when Thiel rejected the D80 boring machine. This is a correct statement of the law. Section 30-2-401(5), MCA. Thiel argues that this instruction is incomplete, as it does not contain the whole of § 30-2-401, MCA, which also concerns performance of a sales contract, delivery of the goods, when title passes, and documents of sale. Thiel thus says that it was error to give this instruction because it enabled Vermeer Sales to argue that revesting vitiated a sale if there was a sale. Not only is Thiel's argument difficult to understand, it makes no cite to the record where Vermeer Sales made such an argument. Further, our review of the record of the closing argument of counsel for Vermeer Sales does not show that such an argument was advanced. As stated above, Thiel is required, pursuant

15

to Rule 23(a)(4), M.R.App.P., to support his argument by citing to the specific pages of the record relied on. Thiel has failed to comply with this rule. Thiel's failure to do so is fatal to this issue on appeal. *See McMahon,* ¶ 6*; State v. Blackcrow,* 1999 MT 44, ¶ 33, 293 Mont. 374, ¶ 33, 975 P.2d 1253, ¶ 33.

¶47 Thiel now argues that the Special Verdict form did not conform to the standard set forth by this Court in *Bevacqua v. Union Pacific Railroad Co.*, 1998 MT 120, ¶ 97, 289 Mont. 36, ¶ 97, 960 P.3d 273, ¶ 97. However, before jury deliberations, the District Court inquired whether Thiel had any objection to the Special Verdict form. Thiel's counsel said he could not find anything to object to, and only stated that he was concerned that it was too complex. He offered no alternative. We will not reverse the District Court's decision to use a particular form of special verdict under these circumstances. *See* Rule 51, M.R.Civ.P.; *Ford v. State,* 2005 MT 151, ¶ 12, 327 Mont. 378, ¶ 12, 114 P.3d 244, ¶ 12; *Griffin v. State,* 2003 MT 267, ¶ 15, 317 Mont. 457, ¶ 15, 77 P.3d 545, ¶ 15.

**ISSUE FIVE**

¶48 **Was there substantial credible evidence to support the jury's finding that Vermeer Sales had not "sold" the D80 to Thiel?**

¶49 Finally, Thiel argues that the only conclusion the jury could have reached from the testimony and other evidence presented was that Vermeer Sales sold the D80 to Thiel, and thus the judgment must be reversed.

¶50 Thiel did present evidence that the machine in question was purchased by him, and he did pay Vermeer Sales $50,000. However, there was also testimony throughout the trial that the D80 was purchased by Vermeer Sales even before Thiel had a contract with Cenex, and the machine was only delivered to Thiel to try it out while John Thiel decided whether

16

to buy it and go into the horizontal drilling business. There was testimony that Thiel would only complete the purchase of the machine if it completed the Yellowstone River bore. There was no written documentation establishing that Thiel had actually purchased the D80. The accounting records were susceptible to interpretation as either a demonstration arrangement or a sale. As there was substantial credible evidence to support the jury's verdict, we will not disturb it on appeal. *See Onstad*, ¶ 56.

## CONCLUSION

¶51 Upon review of the record, we conclude that the District Court did not abuse its discretion in making its rulings on discovery, admission and exclusion of evidence, in its instructions to the jury, and in denying Thiel's motion for a new trial. We affirm judgment of the District Court.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS