No. 00-701

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 91

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

DAVID PAUL NOBACH,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and for the County of Flathead,
                    The Honorable Katherine R. Curtis, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Lane K. Bennett, Attorney at Law, Kalispell, Montana

        For Respondent:

        Hon. Mike McGrath, Attorney General; Jennifer M. Anders,
        Assistant Attorney General, Stephanie Shanler, Legal Intern,
        Helena, Montana

        Thomas J. Esch, Flathead County Attorney; Eric Hummel
        Deputy Flathead County Attorney, Kalispell, Montana


                        Submitted on Briefs:  November 8, 2001

                                   Decided:  May 7, 2002

Filed:


                              Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 David Paul Nobach appeals from the Judgment and Sentence entered by the Eleventh Judicial District Court, Flathead County, on a jury verdict convicting him of the misdemeanor offense of driving under the influence of drugs (DUID). We affirm.

¶2 The sole issue on appeal is whether the District Court committed reversible error in admitting opinion testimony from a Montana Highway Patrol officer regarding the effect of prescription medications on Nobach's driving ability.

BACKGROUND

¶3 Most of the facts in the underlying case are undisputed. On September 14, 1999, Nobach, who is trained as a pharmacist but worked as a waiter, left his place of employment at Woods Bay, Montana, after becoming ill at work. He set out to drive home to Kalispell, a distance of about 25 miles. Nobach recalls driving the approximately five miles to Bigfork, but does not recall leaving there. He regularly took--and had taken that day-- prescription and over-the-counter medications for his chronic pancreatis and low blood pressure caused by atrial fibrillation.

¶4 At about 6:30 p.m., Nobach was driving his vehicle erratically on Montana Highway 35, followed by six or eight other vehicles, when Flathead County Sheriff's Deputy Rod Myers noticed the vehicle while traveling in the opposite direction. Myers turned around to follow Nobach and eventually positioned his patrol vehicle directly behind Nobach's vehicle. Myers followed Nobach for approximately three or four miles and observed Nobach's vehicle swerving,

2

weaving, making wide turns and forcing other vehicles to take evasive action.  Nobach's vehicle eventually drove off the road and rolled over onto its top.  In helping Nobach from his vehicle, Myers noticed Nobach was extremely pale, disoriented and sweaty. In addition, Nobach seemed subdued, nonchalant, sleepy and slow. Paula Gill, a Montana Department of Justice criminal investigator, happened upon the accident scene; her observations of Nobach were consistent with those of Myers.

¶5    Montana Highway Patrol Officer Michael Brooks responded to the accident scene and took over the investigation.  A portable breath alcohol test registered no alcohol in Nobach's system, which caused Brooks to conclude that Nobach was under the influence of drugs because of his physical condition.  That is, Brooks believed Nobach was "under the influence of something.  I didn't know what it was at the time." Brooks thought Nobach was under the influence of some sort of depressant because his pupils were constricted.

¶6    During a pat-down search, Brooks removed approximately 20 pills from Nobach's pants pocket.  He arrested Nobach for DUID and took Nobach to a local hospital for a blood test.  The toxicology report on Nobach's blood sample ultimately indicated prescription medications in Nobach's blood, but no nonprescribed or illegal medications or drugs.

¶7    The State of Montana charged Nobach with misdemeanor DUID. Myers, Brooks, Gill, a pharmacist at Kalispell Regional Medical Center, and Nobach testified at the jury trial.  Exhibits, including the toxicology report on Nobach's blood sample, were

3

admitted into evidence.  The jury convicted Nobach of DUID and, thereafter, the District Court sentenced him and entered judgment.  Nobach appeals.

## DISCUSSION

¶8　Did the District Court commit reversible error in admitting Brooks' opinion testimony regarding the effect of prescription medications on Nobach's driving ability?

¶9　On direct examination, Brooks testified he had received training about the effects drugs and alcohol have on people and their driving behavior.  Specifically, he testified that a person's demeanor and behavior vary depending on what type of drug(s) they have ingested.  The symptoms exhibited by persons under the influence of narcotic drugs such as two of the medications noted in the toxicology report, according to Brooks, were those he noticed in Nobach, namely, "very pale, sweaty;  his speech was slurred; very slow to answer my questions."  On further inquiry, Brooks testified he became aware of Nobach's driving on the evening in question through other people; he had not observed Nobach driving.  When the prosecution asked Brooks his opinion about whether drugs affected Nobach's ability to drive, Nobach's counsel objected on the basis of lack of foundation--on a pharmacological basis--for an expert opinion by Brooks regarding the effect the drugs mentioned in the toxicology report would have had on Nobach.  He also objected that the opinion would go to the ultimate issue of fact for the jury.

¶10　The District Court overruled the objection without determining specifically whether Brooks' opinion would be an expert opinion or

4

not. It merely stated that "opinions can be given, and the fact that it's an ultimate issue doesn't make it inadmissible. . . . I think your objection goes to the weight [the opinion] should be given, not its admissibility." Brooks then opined, based on his training and experience, that Nobach's ability to drive safely was diminished as a result of his consumption of drugs.

¶11 On cross-examination, Nobach's counsel asked Brooks whether it was possible that the levels of various drugs in Nobach's blood, as contained in the toxicology report, were so low that they would have no effect. Brooks replied "I guess anything's possible, but I'm not sure. Like I said, I'm not a pharmacist and I don't work in the forensic lab, so I don't know what those levels mean." Later, on redirect, the prosecution inquired of Brooks regarding the effects two or more depressants can have on one another. Nobach again objected on lack of foundation grounds, but the District Court overruled the objection based on Brooks' training. Brooks then opined that the effect of two depressants is that "[t]hey're multiplied;" in other words, one plus one could equal four or five.

¶12 On appeal, Nobach asserts that the District Court abused its discretion in admitting expert testimony without sufficient foundation, and that the error was prejudicial and requires reversal. The State contends Brooks' testimony was proper lay opinion or, in the alternative, that Brooks was properly qualified as an expert. In any event, according to the State, any error by the District Court in admitting Brooks' opinion that Nobach's

5

ability to drive safely was diminished by his consumption of drugs was harmless.

¶13 We review a district court's evidentiary rulings to determine whether the court abused its discretion. *State v. Southern*, 1999 MT 94, ¶ 48, 249 Mont. 225, ¶ 48, 980 P.2d 3, ¶ 48 (citations omitted). If error occurred, we determine whether it was structural error, which results in automatic reversal, or trial error, which may or may not be reversible depending on whether the error was prejudicial. *See State v. Van Kirk*, 2001 MT 184, ¶ 41, 306 Mont. 215, ¶ 41, 32 P.3d 735, ¶ 41.

### a. Lay or Expert Opinion Testimony

¶14 Under the Montana Rules of Evidence, both lay opinion testimony and expert opinion testimony may be admissible in evidence. Specifically, Rule 701, M.R.Evid., authorizes a lay witness to give an opinion rationally based on the person's perception and helpful to a clear understanding of the person's testimony or the determination of a fact in issue. Rule 702, M.R.Evid., on the other hand, allows the admission of opinion testimony about "scientific, technical, or other specialized knowledge" if the opinion will help the jury to understand the evidence or determine a fact in issue and the witness has been "qualified as an expert by knowledge, skill, experience, training, or education[.]" Our initial focus, therefore, is on whether Brooks' testimony constitutes a lay opinion or an expert opinion.

¶15 In support of its position that the District Court properly admitted Brooks' testimony as lay opinion, the State advances *State*

6

*v. Carter* (1997), 285 Mont. 449, 948 P.2d 1173, and *State v. Bradley* (1993), 262 Mont. 194, 864 P.2d 787, for the proposition that a lay witness may give an opinion regarding intoxication based on the witness' personal observations. In *Carter*, a lay witness was permitted to testify at trial that, based on his personal observations of the defendant, the defendant was intoxicated. We upheld the trial court's admission of the opinion under Rule 701, M.R.Evid., concluding it was rationally based on the lay witness' visual observation of the defendant for "quite some time," and his testimony that he knew the objective signs of intoxication and had "much experience" being around people in varying states of intoxication. *Carter*, 262 Mont. at 456, 948 P.2d at 1177. Similarly, we concluded in *Bradley* that lay opinion testimony that the defendant was intoxicated, based on the three lay witnesses' observations of the defendant after the accident at issue, met the requirements of Rule 701, M.R.Evid. We expressly held that the rule "does not preclude lay witnesses from testifying to a person's state of intoxication." *Bradley*, 262 Mont. at 198, 864 P.2d at 789. The law aside, the fact is that most adults are sufficiently experienced with people who have been drinking to offer an opinion that a person is, in fact, intoxicated from alcohol based on their personal observations.

¶16 The State contends Brooks' opinion that Nobach was under the influence of alcohol or drugs was based on his observations at the scene and, consequently, is analogous to the lay opinions accepted in *Carter* and *Bradley,* under Rule 701, M.R.Evid., as proper lay

7

opinion testimony. At the outset, we observe that the portable breath test Brooks performed at the accident scene ruled out alcohol as a factor in this case and it was only at that point that Brooks believed Nobach was under the influence of drugs. Thus, the type of "intoxication" about which the lay witnesses in *Carter* and *Bradley* opined was not at issue here.

¶17 Moreover, we are not persuaded that lay people are sufficiently knowledgeable about common symptoms of drug consumption, much less the effects of drug consumption on a person's ability to drive a motor vehicle safely, to offer lay opinion testimony on those subjects, based on personal observations, under Rule 701. In addition, Brooks' opinions that Nobach's ability to drive safely was diminished by the consumption of drugs and as to the effect of two depressants purportedly were based on his training and experience, subjects which generally relate to expert opinion testimony. *See* Rule 702, M.R.Evid. Under the facts before us here, a lay person could as easily have believed--based on his or her personal observations--that Nobach was merely ill, as he was when he left his place of employment at Woods Bay. Finally, Brooks' opinion that Nobach's ability to drive safely was diminished by consumption of drugs is substantially unlike the lay opinions in *Carter* and *Bradley*, which did not go to the effect of the apparent intoxication on the person's ability to drive. For all these reasons, we conclude that Brooks' opinion testimony was not qualitatively similar to the lay opinion

8

testimony we held properly admitted under Rule 701, M.R.Evid., in *Carter* and *Bradley*.

¶18 The State also advances *Hart-Anderson v. Hauck* (1989), 239 Mont. 444, 781 P.2d 1116, for the proposition that a law enforcement officer may give an opinion about the cause of an accident and, as a consequence, that the prosecution in the present case was not required to qualify Brooks as an expert under Rule 702, M.R.Evid. In *Hart-Anderson*, a law enforcement officer testified at trial, over a lack of foundation objection, that the cause of an accident was driving too fast for existing road conditions. There, the officer--while not an eyewitness to the accident--had investigated hundreds of automobile accidents during his 14-year career; he also had interviewed the parties involved in the accident and made observations at the scene of the accident, including those regarding icy road conditions. *See Hart-Anderson*, 239 Mont. at 448, 781 P.2d at 1118. We concluded the officer's testimony could assist the trier of fact on the causation issue; the officer had "extensive experience in these types of investigations and an adequate foundation was presented for his testimony." *Hart-Anderson*, 239 Mont. at 449, 781 P.2d at 1119. While we did not specifically address either Rule 701 or Rule 702, M.R.Evid., in *Hart-Anderson*, our reliance on the officer's training and experience, together with our statement that an adequate foundation was presented, at the very least suggests that we had in mind the foundational requirement of Rule 702 that an expert be qualified by "knowledge, skill, experience, training, or

9

education[.]"   Nothing in Rule 701, M.R.Evid., or our cases thereunder, suggests the necessity or propriety of such a focus in determining whether a lay opinion may be admitted.

¶19  The State also posits that *State v. Gregoroff* (1997), 287 Mont. 1, 951 P.2d 578, is similar to the present case.  Its reliance on *Gregoroff* is puzzling, since the case supports Nobach's position rather than its own.  There, the officer was not presented as an expert witness but offered an opinion that the driver was under the influence of alcohol to an extent that it diminished his ability to drive his truck safely; the trial court admitted the testimony over a lack of foundation objection.  The officer's training and experience encompassed 12 weeks' training at the Highway Patrol Academy, including special training in DUI investigation; 8 years' experience as a Highway Patrol Officer; 2 separate 2-week-long traffic investigation courses; an accident reconstruction course which resulted in recognition as an "accident reconstructionist;" a course on instructing on DUI detection; teaching various law enforcement entities on the subject; participation in over 100 DUI arrests; and investigation of over 200 traffic accidents. *Gregoroff*, 287 Mont. at 4, 951 P.2d at 580.  On appeal, we stated the officer's training and experience clearly qualified her as an expert in accident investigation and reconstruction.  We went on to state that, under Rule 702, M.R.Evid., an expert witness can assist the trier of fact by giving an opinion based on her "specialized knowledge," and to hold that the officer was qualified as an expert to express her opinions

10

regarding the cause of the accident. *Gregoroff*, 287 Mont. at 4-5, 951 P.2d at 580-81.

¶20 *Gregoroff* clearly "fills in the blanks" we left in *Hart-Anderson* by clarifying that a law enforcement officer can offer an expert opinion about the cause of an accident so long as sufficient foundation is presented, as required by Rule 702, M.R.Evid. The officer's expert opinion in *Gregoroff* is strikingly similar to that offered by Brooks in the present case, namely, that Nobach's ability to safely drive his vehicle was diminished by his consumption of drugs.

¶21 Nobach compares Brooks' opinion testimony to the testimony of a law enforcement officer regarding the horizontal gaze nystagmus (HGN) test in *Hulse v. State, Dept. of Justice, Motor Vehicle Div.*, 1998 MT 108, 289 Mont. 1, 961 P.2d 75. There, we held that, before a law enforcement officer may testify regarding a correlation between alcohol consumption and HGN, the State must present foundation evidence establishing that the officer has special training or education qualifying him as an expert on the scientific basis for the HGN test. *Hulse*, ¶ 70. Nobach maintains, and we agree, that foundation as to scientific training or education also is required here.

¶22 We conclude Brooks' opinion that Nobach's ability to drive safely was diminished as a result of his consumption of drugs was expert opinion testimony requiring an adequate foundation pursuant to Rule 702, M.R.Evid.

     *b. Foundation*

¶23 The State argues that Brooks' experience and training, like the officer's in *Gregoroff*, provides a sufficient foundation for the admission of his expert opinion that Nobach's ability to drive safely was impaired by consumption of drugs and as to the effects of several prescription medications interacting with each other. We disagree.

¶24 Brooks testified that he had been employed by the Montana Highway Patrol for three and one-half years. During that period, his main duties were "just traffic regulation," although he also testified that he does traffic accidents and arrests for the offense of driving under the influence of alcohol. Prior to joining the Highway Patrol, he went to a military academy in San Antonio, Texas, for two and one-half months, served three years as a military police officer in the Navy, and attended the Highway Patrol Academy in Helena, Montana. He stated generally that he had training at the Highway Patrol Academy, and also three days of specialized training in Missoula, in determining whether a person is under the influence of drugs.

¶25 It is clear that Brooks' training and experience with regard to the effects of drug consumption--particularly the consumption of prescription medications--is substantially less than the *Gregoroff* officer's training and experience on the effects of alcohol ingestion. Brooks did not testify regarding the extent of any training he received relating to determining the influence of drugs at either the Highway Patrol Academy or the military academy. Moreover, he testified affirmatively that a lot of the three days

12

of drug-related training he received centered around common illegal or illicit drugs like marijuana, methamphetamine, speed and cocaine. Brooks also admitted his lack of familiarity with some of the prescription drugs Nobach took regularly and also with some of those which reflected in the toxicology report on Nobach's blood sample.

¶26 We hold the foundation regarding Brooks' training and experience in this case is insufficient to demonstrate the special training or education and adequate knowledge on which to base an expert opinion as required under Rule 702, M.R.Evid. *See Southern*, ¶ 49 (citations omitted). Because Brooks' experience and training did not provide a sufficient foundation for the admission of his expert opinion, the District Court abused its discretion in admitting that testimony.

### *c. Harmless or Reversible Error*

¶27 The final portion of our analysis requires a determination of whether the error in admitting Brooks' expert testimony was harmless, as the State contends, or reversible, as Nobach argues. We recently addressed and clarified our approach to harmless or reversible error. The first step in the analysis is to determine whether the claimed error is categorized as "structural" error or "trial" error. Structural error is error that affects the framework within which a trial proceeds; it typically is of constitutional dimension, precedes the trial, and undermines the fairness of the entire trial proceeding. *Van Kirk*, ¶ 38 (citations omitted). Trial error, on the other hand, typically occurs during

13

the presentation of a case to the jury and includes improper admission of evidence. *See Van Kirk*, ¶¶ 40, 48.

¶28 Based on these definitions of structural error and trial error, the erroneous admission of Brooks' expert testimony is clearly trial error. As such, its admission does not automatically constitute grounds for reversal but is amenable to qualitative assessment under our harmless error statute, § 46-20-701(1), MCA, regarding its prejudicial impact relative to the other evidence introduced at trial. *See Van Kirk*, ¶ 40. Specifically, we review whether the finder of fact was presented with admissible evidence which proved the same facts as did the tainted evidence and, if so, whether the tainted evidence would have contributed to the conviction qualitatively by comparison. *Van Kirk*, ¶ 47.

¶29 On the record before us, the jury was presented with admissible evidence that proved the same facts as Brooks' disputed testimony on whether drugs affected Nobach's ability to drive. The State's expert witness, pharmacist Gary Morrison, identified--one by one--the narcotic and analgesic drugs in the toxicology report on Nobach's blood sample and discussed the negative side effects of those drugs. He testified that methadone, a powerful pain reliever, causes drowsiness and slows reaction time and reflexes. Hydrocodone, another pain reliever, also dulls reflexes. Phenobarbital, a barbituate, has drowsiness as a side effect. The toxicology report also indicated the presence in Nobach's blood of Ambien (a sleeping pill), caffeine, and acetaminophen (a Tylenol ingredient). Morrison testified without objection that this

14

combination of drugs in a person's body would cause drowsiness, cloud judgment and slow reaction time. He further testified he would not advise a person to operate a motor vehicle while taking the drugs contained in the toxicology report and would expect that a trained pharmacist like Nobach would be aware of the effects of taking such drugs. In addition, although Nobach's position at trial was that his reaction to medication was not the cause of his accident, he admitted having stated under oath prior to trial that he believed the accident was caused by an adverse reaction to his medication.

¶30 The above-described expert testimony of pharmacist Morrison covered in greater detail and with greater clarity the same subject matter as the erroneously-admitted testimony of Brooks. Moreover, Morrison's testimony was admitted without objection. Particularly since Brooks admitted his own lack of familiarity with the meaning of the levels of the various drugs in Nobach's blood, we conclude that under the "cumulative evidence" test endorsed in *Van Kirk*, ¶ 43, Brooks' erroneously-admitted testimony--considered qualitatively in comparison to the other evidence presented--would not have contributed to Nobach's conviction.

¶31 We hold that while the District Court abused its discretion in admitting expert opinion testimony from Brooks regarding the effect of the prescription medications on Nobach's driving ability, the error was harmless and is not grounds for reversal.

¶32 Affirmed.

/S/ KARLA M. GRAY

15

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ JIM RICE