CHIEF JUSTICE GRAY,
dissenting.
¶25 I concur in portions of the Court’s opinion, but not in other portions or in the result the Court reaches. I respectfully dissent from the Court’s determination that Wiench’s identifications of pour patterns in photographs and on the scene constituted lay testimony. Because it is my view that the District Court abused its discretion in *42 admitting that testimony and the State has not satisfied its burden of establishing harmless error, I would reverse and remand for a new trial. Consequently, I would not address Henderson’s final expert testimony-related objection, nor would I reach Issue 2.
¶26 Contrary to the Court’s characterization in ¶ 19, Wiench did not merely “describe the areas of the apartment that appeared to him to be extensively burned” after Henderson’s expert testimony-related objection. If the only testimony at issue were Wiench’s affirmative responses to the prosecution’s questions about “more extensively burned areas,” it would be appropriate to characterize that testimony as lay testimony based on personal observations-as the majority properly does with respect to Wiench’s testimony after the earlier expert testimony-related objection in ¶ 16. However, as the Court acknowledges in ¶ 18, ‘Wiench’s testimony also went beyond personal observations made at the scene, to his identifications of pour patterns in diagrams and photographs.” Indeed, Wiench identified a pour pattern in what is presumably State’s Exhibit 14 and opined that something “was dripped down underneath” the couch. He also reaffirmed his identification of that pour pattern with respect to the close-up picture, presented as State’s Exhibit 8, and identified a separate pour pattern on the floor, as presented in State’s Exhibit 9. In my view, Wiench’s identifications and specific descriptions of pour patterns differ from his testimony that some areas of the apartment appeared more burned than others and constitute expert opinion.
¶27 In determining whether the District Court abused its discretion in admitting Wiench’s identifications of pour patterns as Rule 701, M.R.Evid., lay testimony based on its determination that Wiench was an “experienced, knowledgeable firefighter,” it is appropriate to address the authorities advanced by the parties and our related jurisprudence. In my opinion, our cases on the issue of whether “official” personnel may testify as lay witnesses based on their training and experience are in disarray and require clarification for the purpose of guiding trial judges and attorneys in future civil and criminal cases on this increasingly confused subject. This need is highlighted by the Court’s statement that in another case, “we might well conclude... that identification of pour patterns by a firefighter crosses over into the realm of expert testimony[.]” See ¶ 19. Therefore, I address the cases in turn.
¶28 In Massman v. City of Helena (1989), 237 Mont. 234, 242, 773 P.2d 1206, 1211, we concluded a firefighter’s testimony based on “specialized, technical knowledge” was beyond the scope of Rule 701, *43 M.R.Evid., lay testimony. Four years later, in Hislop v. Cady (1993), 261 Mont. 243, 249, 862 P.2d 388, 392, we concluded a police officer could testify about the cause of an accident based on his training and experience, but we did not specify whether that testimony was Rule 701, M.R.Evid., lay testimony or Rule 702, M.R.Evid., expert testimony. In Onstad v. Payless Shoesource, 2000 MT 230, ¶¶ 40-42, 301 Mont. 259, ¶¶ 40-42, 9 P.3d 38, ¶¶ 40-42, we relied exclusively on Hislop in determining law enforcement officers could testify as lay witnesses based on their training and experience.
¶29 In State v. Nobach, 2002 MT 91, ¶¶ 8-22, 309 Mont. 342, ¶¶ 8-22, 46 P.3d 618, ¶¶ 8-22, we determined a highway patrol officer’s testimony regarding the effect of prescription medications on a criminal defendant’s driving ability was expert opinion testimony requiring foundation, rather than lay testimony. In doing so, we observed that in Hart-Anderson v. Hauck (1989), 239 Mont. 444, 781 P.2d 1116, a civil case, we had not addressed Rule 701 or Rule 702, M.R.Evid., but our emphasis there on an officer’s training and experience “suggested] that we had in mind the foundational requirement of Rule 702" when we determined an officer had adequate foundation to testify about the cause of an accident. Nobach, ¶ 18. We also reasoned that State v. Gregoroff(1997), 287 Mont. 1,951 P.2d 578, “‘fills in the blanks’ we left in Hart-Anderson by clarifying that a law enforcement officer can offer an expert opinion about the cause of an accident so long as sufficient foundation is presented, as required by Rule 702, M.R.Evid.” Nobach, ¶¶ 19-20.
¶30 Similarly, in Christofferson v. City of Great Falls, 2003 MT 189, ¶¶ 35-49, 316 Mont. 469, ¶¶ 35-49, 74 P.3d 1021, ¶¶ 35-49, we determined a trial court properly excluded paramedics’ lay opinions regarding the likelihood of a successful intubation because those opinions were “within the realm of expert testimony requiring foundation.” In tracing our prior cases, we stated that, “[w]hile we did not expressly state in either Hislop or Hart-Anderson that the officers’ testimony was properly admitted as expert testimony under Rule 702, as opposed to lay testimony under Rule 701, the language of those cases certainly supports that inference.” Christofferson, ¶ 47. We distinguished Onstad on the basis that the officers in that case “were not offering scientific opinions,” while “the paramedics [in Christofferson] were being called upon to do just that.” Christofferson, ¶ 49.
¶31 Approximately a year later, in State v. Frasure, 2004 MT 305, ¶¶ 17-18,323 Mont. 479, ¶¶ 17-18, 100 P.3d 1013, ¶¶ 17-18, we concluded *44 police officers’ training and experience “provided a sufficient foundation for them to provide lay opinion testimony as to whether it was likely that [the criminal defendant] possessed the drugs with intent to sell.” We relied exclusively on Onstad and Hislop in doing so. ¶32 As this recitation demonstrates, two lines of cases have developed with respect to whether “official” personnel may testify as lay witnesses about scientific, technical or other specialized knowledge, based on their training and experience. One line of cases, consisting of Frasure and Onstad, holds that training and experience may form a basis for an “official” person’s Rule 701, M.R.Evid., lay testimony. The other line, consisting primarily of Christoff erson, Nobach and Massman, holds that testimony based on training and experience conveying scientific, technical or specialized knowledge offered to assist the trier of fact is Rule 702, M.R.Evid., expert testimony. I believe we are obligated to rectify this situation as we have done with some frequency in recent years when parallel lines of authority have come to our attention. See, e.g., Quantum Electric, Inc. v. Schaeffer, 2003 MT 29, ¶¶ 16-30, 314 Mont. 193, ¶¶ 16-30, 64 P.3d 1026, ¶¶ 16-30; In re Estate of Bradshaw, 2001 MT 92, ¶¶ 14-16, 305 Mont. 178, ¶¶ 14-16, 24 P.3d 211, ¶¶ 14-16.
¶33 The plain language of Rule 702, M.R.Evid., and our recognition in Christofferson that Hislop was almost certainly an expert testimony case lead me to conclude that testimony based on a “foundation” of training and experience is expert testimony under Rule 702, M.R.Evid., when that testimony involves “scientific, technical, or other specialized knowledge [that] will assist the trier of fact.” I would overrule Frasure, Onstad and any other cases to the extent they state “training and experience” may form a basis for lay testimony. As a result, I would also conclude the District Court in the present case was incorrect in reasoning that training and experience may form a basis for lay testimony.
¶34 Turning to Wiench’s identifications of pour patterns over Henderson’s expert testimony-related objection, I first observe Rule 701, M.R.Evid., limits lay testimony to opinions or inferences rationally based on the witness’ perception. In Nobach, ¶¶ 15-17, we reasoned an officer could not offer lay opinion testimony about the effects of prescription drugs on a person’s driving ability because, while most adults can recognize indications of alcohol intoxication, we were “not persuaded that lay people are sufficiently knowledgeable about common symptoms of drug consumption, much less the effects of drug consumption on a person’s ability to drive a motor vehicle safely, to *45 offer lay opinion testimony on those subjects, based on personal observations, under Rule 701.” Similarly, here I am not persuaded that a lay person is sufficiently familiar with the concept of a pour pattern to identify one on the scene or in a photograph.
¶35 Moreover, I do not agree with the Court that Wiench’s “unobjected to” general description of a pour pattern, as set forth in ¶ 12, is dispositive in this regard. The question is not whether the jury, after hearing the description, could infer the presence of pour patterns based on photographs and testimony regarding personal perceptions. The question is whether Wiench’s actual identification of pour patterns is an expert opinion, as opposed to lay testimony based on personal observations and reasonable inferences therefrom.
¶36 In this respect, I wholeheartedly agree with the Court’s observation in ¶ 19 that the photograph exhibits “do no more than illustrate for the jury the areas of the apartment [Wiench] observed[.]” Indeed, I do not believe an unassisted lay person could identify the pour patterns Wiench identified in the photographs-even in light of his unchallenged general description of a pour pattern. The fact that the pour patterns are not obvious in the pictures further buttresses my view that Wiench’s testimony is not based solely on his personal observations and reasonable inferences therefrom, as contemplated by Rule 701, M.R.Evid.
¶37 Rule 702, M.R.Evid., defines expert testimony, in part, as “scientific, technical, or other specialized knowledge” that will “assist the trier of fact to understand the evidence” and requires that only a witness qualified by “knowledge, skill, experience, training, or education may testify thereto[.]” In my view, Wiench’s identifications of pour patterns at the scene and in the photographs went well beyond lay testimony, and constituted scientific, technical or other specialized knowledge offered to assist the jury in understanding that the photograph exhibits depicted pour patterns. Furthermore, based on Wiench’s affirmative answer when asked if a pom- pattern “leaves a specific kind of burn damage, based upon the fires you’ve worked,” I believe Wiench’s experience as a firefighter-not merely his personal observations-enabled him to recognize and identify pour patterns and qualified him to testify about them. Thus, I would conclude Wiench’s identifications of pour patterns fall squarely within the definition of Rule 702, M.R.Evid., expert testimony, and could only be admitted as such. Because the State expressly stated it was not offering Wiench’s testimony as expert testimony, I would hold the District Court abused its discretion in admitting the testimony as lay testimony.
*46 ¶38 Finally, it is critical to address the State’s contention that any error in this case-which I conclude occurred-was harmless because no prejudice resulted. The State correctly points to the harmless error analysis we first set forth in State v. Van Kirk, 2001 MT 184, 306 Mont. 215, 32 P.3d 735.
¶39 In Van Kirk, ¶¶ 34-43, we abandoned the “overwhelming evidence” test once applied in determining whether errors were harmless. We did so because that test was a “‘scorecard’ analysis” that focused on the quantity rather than the quality of the evidence, created “an unpredictable and subjective framework,” and could have the “unintended consequence of inviting the State to offer inadmissible yet damaging evidence in a strong case, even if by happenstance, since the worst that can happen is that the error is noted but deemed harmless.” Van Kirk, ¶¶ 34-35.
¶40 In place of the “overwhelming evidence” test, we adopted-as the State correctly posits-a two-step analysis for determining whether error is harmless or reversible. The first step is to determine whether the error is structural or trial error. Van Kirk, ¶ 37. Structural error “is typically of constitutional dimensions, precedes the trial, ... undermines the fairness of the entire proceeding” and requires automatic reversal. Van Kirk, ¶¶ 38-39. Trial error “typically occurs during the presentation of a case to the jury” and “is amenable to qualitative assessment... for prejudicial impact relative to the other evidence introduced at trial.” Van Kirk, ¶ 40. If the error is trial error, the analysis proceeds to the second step, which is to determine whether the State has demonstrated the error was not prejudicial under the circumstances. Van Kirk, ¶¶ 41-42. Under this step, the State first “must direct us to admissible evidence that proved the same facts as the tainted evidence” if it is possible to do so. See Van Kirk, ¶¶ 44-45. If the State directs us to cumulative evidence regarding an element of the offense or the tainted evidence does not go toward an element, the State then must demonstrate, qualitatively and by comparison to the admissible evidence, that there is no reasonable possibility that the tainted evidence might have contributed to the conviction. Van Kirk, ¶¶ 44, 47.
¶41 The State asserts the admission of Wiench’s testimony occurred during the presentation of evidence and, therefore, is trial error. It then recites its burdens under Van Kirk, and asserts the photographs and other witnesses’ testimony constitute cumulative, admissible evidence regarding the mental state element of arson. It does not, however, discuss whether Henderson was prejudiced with regard to *47 any aspect of the burglary or criminal endangerment charges, nor does it address the “qualitative” aspect of Van Kirk in relation to any charge, including the arson charge.
¶42 I agree with the State that the admission of Wiench’s identification of pour patterns constitutes trial error and, therefore, I would proceed to the next step of the analysis and determine whether the State has demonstrated the error was not prejudicial. See Van Kirk, ¶¶ 41-42. Even assuming arguendo that the State has met its burden of directing us to cumulative, admissible evidence establishing Henderson acted purposely or knowingly, I would conclude the State has utterly failed-indeed, has not even attempted-to meet its burden of demonstrating, qualitatively and by comparison to the admissible evidence, that there was no reasonable possibility that Wiench’s tainted testimony might have contributed to Henderson’s arson conviction. I would further conclude, under the circumstances of this case and absent contrary argument from the State, that the abuse of discretion in admitting Wiench’s testimony was also prejudicial with respect to the burglary and criminal endangerment charges.
¶43 I dissent from the Court’s conclusion that the testimony at issue was lay testimony. I also dissent from the Court’s total failure to address our jurisprudence on this important issue. I would reverse and remand this case for a new trial on the arson, burglary and criminal endangerment charges.