FILED

January 13 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0396

DA 13-0396

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 11N

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

NORMAN VAUGHN PULLIAM,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC 12-86
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender, Lisa S. Korchinski, Assistant
          Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Brenda K. Elias, Assistant
          Attorney General, Helena, Montana

          Mitchell A. Young, Lake County Attorney, Polson, Montana

Submitted on Briefs:  December 3, 2014
Decided:   January 13, 2015

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Norman Vaughn Pulliam appeals from his conviction of the offense of criminal possession of dangerous drugs, a felony, in the Twentieth Judicial District Court, Lake County. We affirm.

¶3     The issue on appeal is whether the District Court erred when it allowed Montana Highway Patrol Trooper James Sanderson to present Drug Recognition Expert testimony.

¶4     On June 14, 2011, Trooper Sanderson observed a red Chevy full-size pickup driving "very rapidly" on Mud Lake Trail, approaching the intersection with Highway 93. The pickup ran a stop sign and then came to a stop in the middle of Highway 93. Trooper Sanderson decided to stop the pickup based on the stop sign violation, and as he began to follow the pickup in his patrol car, the pickup rapidly accelerated. When the pickup finally slowed and pulled to the side of the road, Trooper Sanderson observed what he called "furtive movement" between the driver and passenger.

¶5     As Trooper Sanderson exited his patrol car, the driver of the pickup, Pulliam, also began exiting his vehicle. Trooper Sanderson told Pulliam to remain in the vehicle. He then approached and asked for Pulliam's driver's license, vehicle registration, and proof of insurance. Pulliam ignored the question and explained that he was having a bad day.

2

Trooper Sanderson asked for the documents two more times, and Pulliam finally said he did not have them. Trooper Sanderson then asked Pulliam to step out of the vehicle.

¶6 When Pulliam exited the vehicle, Trooper Sanderson observed that Pulliam's movements were stiff, he was unable to remain still, and he clenched his jaw when speaking. He also pulled up his sleeves in a gesture like a "nervous tic," revealing sores and red marks around his wrists. Trooper Sanderson obtained Pulliam's consent to search the pickup. He found a glass pipe of a type commonly used to smoke stimulants, a syringe containing a clear liquid, an empty syringe, and a hypodermic needle cap. An additional syringe was later discovered by a tow truck operator. Trooper Sanderson conducted a preliminary test of the clear liquid in the syringe, and the results were positive for methamphetamine or amphetamines. The pipe and loaded syringe were sent to the Montana Crime Lab for analysis, and both the pipe residue and the liquid in the syringe tested positive for methamphetamine.

¶7 Trooper Sanderson is certified as a Drug Recognition Expert (DRE). Before trial, Pulliam moved to exclude DRE testimony, calling it "pseudo-scientific." A hearing was held on the motion, at which Trooper Sanderson testified about his training as a DRE. He testified that the DRE program is used in all 50 states as well as internationally. A DRE evaluation relies on factors like blood pressure, pupil size, and pulse rate to determine whether an individual is under the influence of drugs. Trooper Sanderson testified that in the approximately 20 cases where he was later able to obtain chemical analysis, his DRE identification was correct 100% of the time. The District Court decided to allow the DRE

testimony, concluding that the tests were generally accepted and Trooper Sanderson had been trained in their application.

¶8 At trial, Trooper Sanderson testified about his DRE training and the factors used in completing a DRE evaluation. He testified that he did not, however, conduct a DRE evaluation in this case, because Pulliam asserted his Fifth Amendment right to remain silent. Trooper Sanderson nevertheless testified that he observed signs indicating Pulliam had used stimulants, including the clenched jaw, rapid and incessant speech, pock marks, dilated pupils, and a short track mark in his arm. He observed similar signs in the passenger, a Mr. Titchbourne. A technician from the Montana Crime Lab testified that both the residue from the pipe and the liquid in the syringe contained methamphetamine. Pulliam was convicted of criminal possession of dangerous drugs and sentenced to five years in the Montana State Prison.

¶9 We review a district court's evidentiary rulings for an abuse of discretion, including those regarding the qualifications and competency of an expert witness. *State v. Harris*, 2008 MT 213, ¶ 6, 344 Mont. 208, 186 P.3d 1263; *State v. Nobach*, 2002 MT 91, ¶ 13, 309 Mont. 342, 46 P.3d 618. Trial courts possess considerable latitude when ruling on the admissibility of expert witness testimony. *Harris*, ¶ 6.

¶10 Although the issue here has been framed as one of the admissibility of DRE evidence as expert testimony, we observe that Trooper Sanderson did not conduct a DRE evaluation of Pulliam. His testimony instead addressed his observations of Pulliam's appearance and behavior, including that he was restless, talkative, spoke through a clenched jaw, appeared tense in his upper body, had sores and track marks on his arms,

4

and dilated pupils.  He also observed that Pulliam's behavior in attempting to exit the vehicle and ignoring requests for his driver's license, proof of insurance, and registration appeared evasive.  Trooper Sanderson's opinion that Pulliam was likely under the influence of a stimulant such as methamphetamine was rationally based on his perceptions.  M. R. Evid. 701.

¶11   To the extent Trooper Sanderson's opinions were based on his specialized knowledge and experience, there was ample testimony establishing this expertise.  *See* M. R. Evid. 702.  Trooper Sanderson testified that he had been with the Montana Highway Patrol for over 12 years and had seen between 40 and 50 cases involving methamphetamine in the past year.  He testified that he participated in several weeks of criminal interdiction training each year.  He testified about the selection process for DRE training, the prerequisites for training, the development of the program, the training course itself, and the DRE evaluation process.  He testified that the program is widely accepted, used in every state and around the world, and similar to techniques used in standardized field sobriety tests.  This was sufficient to establish his qualifications as an expert.  *See Harris*, ¶¶ 12-14.

¶12   We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for memorandum opinions.  The issues in this case are ones of judicial discretion, and there clearly was not an abuse of discretion.

¶13   Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT