No. 04-698

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 108

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

WILLIAM WALKER TODD,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                    In and For the County of Gallatin, Cause No. DC 03–369
                    Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Karl Knuchel, Attorney at Law, Livingston, Montana

       For Respondent:

              Hon. Mike McGrath, Attorney General; Mark W. Mattioli,
              Assistant Attorney General, Helena, Montana

              Marty Lambert, Gallatin County Attorney; Jami Rebsom,
              Deputy County Attorney, Bozeman, Montana

                            Submitted on Briefs: April 12, 2005

                                  Decided: May 4, 2005

Filed:

              _____
                            Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 William Walker Todd (Todd) appeals from the judgment entered by the Eighteenth Judicial District Court, Gallatin County, on his conviction for driving under the influence of alcohol (DUI), a misdemeanor, in violation of § 61-8-401, MCA. We affirm.

¶2 Todd raises the following issues:

¶3 1. Did the District Court err in denying Todd's motion to dismiss?

¶4 2. Did the District Court abuse its discretion in allowing the arresting officer to testify regarding the results of Todd's field sobriety tests?

## BACKGROUND

¶5 At approximately 2:00 a.m. on June 26, 2003, Gallatin County Sheriff's Deputy Don Peterson (Peterson) and another sheriff's deputy were conducting a canine training exercise in Lindley Park (the Park) in Bozeman, Montana, when they observed a vehicle enter the Park and park about twenty feet from their patrol cars. Pursuant to a City of Bozeman (City) ordinance, the Park is closed to the public after dark. Peterson walked toward the vehicle to inform the occupants that the Park was closed. As Peterson approached, the driver exited the vehicle carrying an opened bottle of beer in one hand and two or three unopened beer bottles in the other hand. The City also has enacted an open container ordinance. Peterson continued toward the driver to inform the driver regarding both the Park closure and the open container ordinances.

¶6 When Peterson reached the driver--subsequently identified as Todd--he smelled the odor of alcohol on Todd's breath and observed that Todd's eyes were glassy. Peterson asked whether Todd had been drinking and Todd replied he had consumed three beers. Todd further stated that he and his companion were intending to climb the nearby hill to drink beer and watch the city lights. Peterson then requested Todd to perform several field sobriety tests. Based on Peterson's observations during the encounter and Todd's performance of the field sobriety tests, Peterson arrested Todd and transported him to the Gallatin County Detention Center. At the detention center, Peterson requested Todd to take a breath test to determine his blood alcohol concentration. After refusing several times, Todd eventually agreed to take the breath test, which revealed his blood alcohol concentration to be .135.

¶7 Todd was charged by complaint in the Gallatin County Justice Court with misdemeanor DUI. He moved the Justice Court to dismiss the charge on the basis that the initial investigatory stop was not justified because Peterson lacked a particularized suspicion that Todd was DUI. The Justice Court denied the motion. Todd was convicted of DUI by a jury and sentenced by the Justice Court. He then appealed his conviction to the District Court, where he renewed his motion to dismiss for lack of particularized suspicion justifying the investigatory stop. The District Court denied the motion. The District Court held a bench trial and found Todd guilty of DUI. The court then sentenced Todd and entered judgment on the conviction and sentence. Todd appeals.

DISCUSSION

¶8 1. Did the District Court err in denying Todd's motion to dismiss?

3

¶9 Todd moved the District Court to dismiss the DUI charge on the basis that Peterson did not have sufficient particularized suspicion that Todd was DUI to justify the investigatory stop which led to his arrest. The District Court held a hearing on the motion at which Peterson was the only witness to testify. At the close of the hearing, the court entered oral findings of fact and conclusions of law, determining that Peterson was justified in initially approaching and stopping Todd based on the fact that the Park was closed to the public. The court further determined that information obtained by Peterson during the initial stop ripened into particularized suspicion that Todd was DUI and justified the officer's further investigation. On this basis, the District Court denied Todd's motion. Todd asserts error. We review a district court's ruling on a motion to dismiss in a criminal proceeding *de novo* to determine whether the court's decision was correct. *State v. Loney*, 2004 MT 204, ¶ 6, 322 Mont. 305, ¶ 6, 95 P.3d 691, ¶ 6.

¶10 Todd asserts that the investigatory stop which led to his arrest was not justified because, when Peterson first approached him, Peterson did not have a particularized suspicion that Todd was DUI. Todd points out that Peterson testified at the hearing on the motion to dismiss that Peterson observed no erratic driving or other traffic violations by Todd when he entered the Park which would indicate impaired driving ability. Furthermore, Peterson testified that, as he approached Todd, he had no intention of issuing citations for either the open container or being in the Park after hours because for "political reasons" he generally would not issue citations for City ordinance violations, but would call a City police officer to do so. Thus, Todd argues that, absent observation of impaired driving ability or

4

intent to cite Todd for the City ordinance violations, Peterson had no basis to support a particularized suspicion of wrongdoing to justify stopping Todd. We disagree.

¶11 Section 46-5-401(1), MCA, provides that

> [i]n order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

We apply a two-part test to determine whether a particularized suspicion sufficient to justify an investigative stop exists: (1) whether there is objective data from which an experienced officer can make certain inferences; and (2) whether those inferences result in a suspicion that a person is or has been engaged in wrongdoing. *Loney*, ¶ 7. Whether a particularized suspicion exists is a question of fact dependent on the totality of the circumstances. *Loney*, ¶ 7. Furthermore, an "offense" is defined as "a violation of any penal statute of this state or any ordinance of its political subdivisions." Section 46-1-202(15), MCA.

¶12 It is undisputed here that Peterson observed Todd drive into the Park after dark and that, pursuant to a City ordinance, the Park is closed to the public after dark. Peterson further observed Todd holding an open beer bottle in violation of the City's open container ordinance. Thus, Peterson had a particularized suspicion that Todd was committing an "offense" by violating local ordinances and he was authorized to stop Todd "to obtain or verify an account of [Todd's] presence or conduct." *See* § 46-5-401(1), MCA. Moreover, Todd cites no authority in support of his contention that, because Peterson did not intend to

issue citations for the ordinance violations, Peterson lacked particularized suspicion to initiate an investigatory stop pursuant to § 46-5-401(1), MCA.

¶13 As Peterson approached Todd to inform him of the ordinance violations, Peterson observed that Todd's breath smelled of alcohol and his eyes were glassy. As stated above, Peterson also observed Todd exit the driver's side of his vehicle carrying an open bottle of beer. When questioned, Todd admitted he had been drinking. Furthermore, Peterson testified at the hearing on the motion to dismiss that his suspicion that Todd might be under the influence of alcohol was bolstered by the fact that the incident occurred at 2:00 a.m., a time of day when, in his experience, it was common for people to be under the influence of alcohol. Finally, the parties do not dispute that Todd was driving the vehicle. We conclude that Peterson's observations in these regards constituted objective data from which Peterson could make inferences resulting in the suspicion that Todd was DUI. *See Loney*, ¶ 7.

¶14 Todd argues that Peterson could not have formed a particularized suspicion that he was DUI because Peterson did not observe him driving erratically or committing any traffic violations. However, Todd cites no authority which requires a law enforcement officer to observe erratic driving or traffic violations in order to have a particularized suspicion that a person is DUI. Whether a particularized suspicion exists is dependent on the totality of the circumstances. *Loney*, ¶ 7. Here, although Peterson did not see Todd drive erratically, he did have other data which, in his experience and under the circumstances, indicated that Todd was DUI.

¶15     We conclude that Peterson had a particularized suspicion, initially based on his observation of Todd violating City ordinances and subsequently based on his observations of objective data indicating Todd was under the influence of alcohol, to conduct an investigatory stop pursuant to § 46-5-401(1), MCA.  We hold, therefore, that the District Court did not err in denying Todd's motion to dismiss.

¶16     2. Did the District Court abuse its discretion in allowing the arresting officer to testify regarding the results of Todd's field sobriety tests?

¶17     At the bench trial, the State of Montana (State) called Peterson as a witness in its case-in-chief.  Peterson testified during the State's direct examination regarding the field sobriety tests he administered to Todd, the results of those tests and his opinion that the test results indicated Todd was under the influence of alcohol.  On cross-examination, Todd questioned Peterson about the manner in which he administered and evaluated the tests, attempting to elicit admissions that the tests were unreliable as evidence of Todd's intoxication.  At no time did Todd object to Peterson's testimony about the field sobriety tests or contend that the test results were inadmissible as evidence at trial.

¶18     On appeal, Todd argues that the District Court abused its discretion in admitting Peterson's testimony regarding the field sobriety tests.  He asserts that Peterson failed to administer the field sobriety tests in conformity with the instructions and procedures prescribed by the National Highway Traffic Safety Administration (NHTSA) handbook. On this basis, Todd contends that Peterson's administration and scoring of the field sobriety tests were so tainted that admission of the results as evidence at trial constituted a violation of his

7

due process rights. The State responds that we should decline to address this issue because Todd failed to raise this argument before the trial court. We agree with the State.

¶19 Section 46-20-104(2), MCA, provides that

> [u]pon appeal from a judgment, the court may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgment. Failure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2).

Moreover, it is well-established that we will not address an argument or issue where the appellant failed to contemporaneously object or otherwise raise the issue in the district court. *See, e.g., State v. Minez*, 2003 MT 344, ¶ 19, 318 Mont. 478, ¶ 19, 82 P.3d 1, ¶ 19; *State v. Micklon*, 2003 MT 45, ¶ 8, 314 Mont. 291, ¶ 8, 65 P.3d 559, ¶ 8. As stated above, Todd did not object to Peterson's testimony regarding the field sobriety tests at the time the testimony was offered at trial. Additionally, Todd did not mention the NHTSA handbook at trial, let alone assert that Peterson's failure to administer the tests as prescribed by the handbook made any testimony regarding the field sobriety tests inadmissible. Finally, Todd does not argue that this Court should address this issue pursuant to our statutory or common law powers of plain error review. We conclude, therefore, that Todd has waived his right to raise this issue on appeal and we decline to address it further.

¶20 Affirmed.


/S/ KARLA M. GRAY

8

We concur:


/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JOHN WARNER
/S/ JIM RICE