No. 04-694

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 333

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

DANIEL HENDERSON,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                  In and for the County of Cascade, Cause No. DC 2004-087
                  The Honorable Dirk M. Sandefur, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Carl B. Jensen, Attorney at Law, Great Falls, Montana

        For Respondent:

                Hon. Mike McGrath, Montana Attorney General, C. Mark Fowler,
                Assistant Attorney General, Helena, Montana

                Brant S. Light, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  December 7, 2005

Decided:  December 20, 2005

Filed:

_____
                    Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1　Daniel Henderson (Henderson) appeals from the judgment and sentence entered by the Eighth Judicial District Court, Cascade County, upon a jury verdict convicting him of the felony offenses of arson, burglary, criminal endangerment and tampering with physical evidence. We affirm.

¶2　Henderson raises two issues on appeal:

¶3　1. Did the District Court abuse its discretion in allowing a firefighter to testify as a lay witness regarding certain aspects of his investigation?

¶4　2. Were Henderson's due process rights violated at sentencing?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5　The State of Montana charged Henderson with four felonies, alleging he unlawfully broke into an apartment, set fire to it, endangered building occupants and concealed cigarette lighters after arrest. Henderson pled not guilty, and the case proceeded to trial. Eleven witnesses, including firefighter Bobby Wiench, testified for the State, and three witnesses testified for the defense.

¶6　During Wiench's testimony, defense counsel objected numerous times on grounds that Wiench was not qualified as an expert and, therefore, certain testimony lacked foundation. The District Court overruled the first such objection after the prosecutor explained the type of testimony anticipated in response to his question. After the second objection, the court allowed defense counsel to *voir dire* the witness and ultimately overruled

2

the objection, determining Wiench could testify as a lay witness based on his experience as a firefighter. The court also overruled subsequent objections.

¶7     Ultimately, the jury convicted Henderson of all four felony offenses. At sentencing, the State offered sixty (60) years without parole. Previously, however, the State had offered fifty (50) years with twenty-five (25) years suspended. Henderson rejected this offer. The District Court sentenced Henderson to twenty (20) years for felony arson, twenty (20) years for felony burglary, and five (5) years for felony evidence tampering. These sentences were to run concurrently. The court also sentenced him to fifty (50) years for felony criminal endangerment to run consecutively with the other three felony counts. The sentences were to be served at Montana State Prison (MSP). Henderson appeals. We set forth additional facts as necessary in the discussion below.

## STANDARD OF REVIEW

¶8     We review rulings on the admissibility of evidence, including oral testimony, for an abuse of discretion. *State v. Cesnik*, 2005 MT 257, ¶ 12, ___ Mont. ___, ¶ 12, ___ P.3d ___, ¶ 12 (citations omitted).

## DISCUSSION

¶9     *Did the District Court abuse its discretion in allowing a firefighter to testify as a lay witness regarding certain aspects of his investigation?*

¶10    Rules 701 and 702, M.R.Evid., address lay and expert testimony. Rule 701, M.R.Evid., provides:

> [i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a

3

clear understanding of the witness' testimony or the determination of a fact in issue.

Rule 702, M.R.Evid., provides:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Pursuant to § 46-16-201, MCA, Rules 701 and 702, M.R.Evid., apply in criminal cases as well as in civil cases.

¶11 Henderson asserts the District Court abused its discretion in admitting Wiench's testimony regarding points of origin, pour patterns, the fire pattern, the lack of evidence of mechanical and electrical causes, the risk to building occupants and the possibility the fire could have blocked exits. He contends the admission of this testimony prejudiced him with respect to the arson, burglary and criminal endangerment convictions because the testimony was "the foundation of the State's case" and was offered to establish the fire "was intentional and not an accident." Henderson does not challenge his conviction of the offense of tampering with physical evidence; therefore, we do not address it.

¶12 Defense counsel did not request a continuing objection at trial, nor does Henderson assert on appeal that we should construe his objections as continuing objections. We do not address an argument or issue when the appellant has failed to contemporaneously object or otherwise raise the issue at trial. *State v. Todd*, 2005 MT 108, ¶ 19, 327 Mont. 65, ¶ 19, 111 P.3d 677, ¶ 19 (citation omitted). Here, the unchallenged testimony includes Wiench's definition of the term "point of origin" as "where the fire started," his discussion of ruling out mechanical and electrical causes, and the following exchange regarding pour patterns:

4

Q: What exactly is the concept of a pour pattern?
A: It's a pattern you look for where whatever substance has been poured will burn and will burn hotter than the rest of the area. So you'll have an area that's burned deeper than the other area. It hasn't spread to the area--a piece of carpet, for example. Where the pour is, it'll burn, but it won't burn much past it if it's caught fast enough to where the--the rest of the carpet.
Q: So that leaves a specific kind of burn damage, based upon the fires you've worked?
A: Yes, sir.

As stated, Henderson did not object to these portions of Wiench's testimony and they remain unchallenged.

¶13    In addition, we note that Henderson's counsel sought and received permission to *voir dire* Wiench in the presence of the jury during the State's case. During *voir dire*, Wiench responded to defense counsel's questions by--among other things--discussing how to find a point of origin of a fire, describing indications of arson, and discussing pour patterns. While we appreciate that counsel was attempting to challenge Wiench's qualifications as an expert, the fact is that the State offered the testimony as lay testimony, and the court admitted it as such. If Henderson's counsel believed that the testimony adduced during the *voir dire* was inadmissible as lay testimony, he should have asked the court to strike the testimony or moved for a limiting instruction. Rule 103, M.R.Evid. (Error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected *and* a timely objection or motion to strike appears of record.); see also *State v. Long*, 2005 MT 130, ¶ 25, 327 Mont. 238, ¶ 25, 113 P.3d 290, ¶ 25 (When a trial judge withdraws or strikes improper testimony from the record with an accompanying cautionary instruction to the jury, any error committed by its introduction is presumed cured.). In the case before us, Henderson's counsel did neither. Nor did he register a continuing objection to much of

the ensuing testimony which was premised in part upon Wiench's *voir dire* testimony. A party waives the right to contest evidence on appeal when that party's actions elicited the evidence. *State v. Smith*, 2005 MT 18, ¶ 10, 325 Mont. 374, ¶ 10, 106 P.3d 553, ¶ 10.

¶14 As stated above, the District Court overruled Henderson's objection when the prosecutor described the anticipated response to his question. On appeal, Henderson does not mention this ruling or Wiench's response, which was that a battalion chief first told him about the possibility of arson. Thus, we decline to address Wiench's testimony following the first objection.

¶15 Henderson next objected when the prosecutor asked Wiench if he believed one item in the living room was a point of origin. After defense counsel conducted *voir dire*, the trial court overruled the objection, reasoning Wiench "is and has been demonstrated here today to be an experienced, knowledgeable firefighter and is testifying within the scope of his observations and function." While the record supports the District Court's statement about Wiench's training and experience, Wiench was not presented or qualified as an expert witness and, in fact, the State expressly stated it was not offering Wiench's testimony as expert testimony.

¶16 The question remains, however, whether Wiench's testimony following the ruling, as set forth below, was expert testimony or lay testimony:

> Q: Mr. Wiench, as you worked through this scene, did there appear to be areas where the most concentrated burning had taken place? Based on what you personally saw?
> A: Yes, sir. There's three.
> Q: And where were they located?
> A: On the couch, in the living room, at the foot of the bed in the bedroom, and there was a spot in between the bed and the closet where it was burnt completely through the carpet, which was not a protected--none of the rest of

6

the area around it was protected.  And it had burned all the way through.  And there was also the area between the bed and the dresser.

. . .

Q: And you personally saw that bed when you did your walk-through.  Is that correct?

A: Yes, sir.

Q: And you personally saw the burn damage near the closet.  Is that correct?

A: Yes, sir.

Q: Did you also see the burn damage that was actually on the couch?

A: Yes, sir.

As stated above, Rule 701, M.R.Evid., provides, in part, that a lay witness may state opinions and inferences that are rationally based on his or her perceptions.  In this exchange, Wiench testified based on his personal observations and inferences drawn therefrom that three areas of the apartment appeared more burned than others.  Such testimony constitutes lay testimony pursuant to Rule 701, M.R.Evid.  Thus, we conclude the District Court did not abuse its discretion in admitting the lay testimony that followed Henderson's second expert testimony-related objection.

¶17   Henderson objected again following the prosecutor's request that Wiench identify where in the residence he had seen anything that looked like a pour pattern to him.  The District Court ruled Wiench could apply his "unobjected to testimony as to what a pour pattern is," as set forth in ¶ 12 above, to "his observations at the scene."  The following exchange then occurred between the prosecutor and Wiench, beginning with a discussion of an unspecified photograph exhibit that is apparently State's Exhibit 14:

Q: Could you please show me a photo that in your mind would be consistent with a pour pattern?

A: This pattern over right here.

Q: Okay.  And what aspect of this photo would appear to be a pour pattern to you?

A: You can see the--underneath the couch where it has burned deeper.  But nothing on this side happened.  It was dripped down.  You can see where it

7

had dripped down--whatever was poured on it was dripped down underneath and started that underneath on fire.

Q: Were there other rooms in the house where you thought you might have seen a pour pattern?

A: The bedroom. There's a better picture of a pour pattern.

Q: Okay. And this is State's Exhibit Number 8. Is that essentially a close up of the other item you showed us on the couch?

A: Yes, sir.

Q: Okay. Thank you. Let me show you another picture here. This is State's Exhibit Number 11. Can you tell me what's depicted in this exhibit?

A: You can see where the--where the bedding is burnt away on two sides of the bed. But up in the--it would be the southeast corner of the bed, the way the bed is facing--how everything is still--you can still see the blankets. So you know that the fire got hotter on this outside edge.

Q: When you explored this room during your walk-through, did it appear that that bed was more extensively burned than other items in the room?

A: Yes.

Q: Just based on looking at them with your own eyes?

A: Yes.

. . .

Q: Oh, I'm sorry. What did you say?

A: The floor.

Q: Did that appear to be a pour pattern as well?

A: Yes, sir.

Q: And which room was that located in?

A: That was in the bedroom.

Q: Okay. Can you please tell me where that was again? In relation to the closet?

A: It was right in front of the closet between the foot of the bed and the closet.

Q: And you're saying you saw more extensive burning here than you did in the areas immediately next to it? Is that what you're saying?

A: Yes, sir.

Q: And again, this is State's Exhibit Number 9?

A: Yes.

¶18    Again, Wiench properly testified as a lay witness that he personally observed areas on or near the couch and bed that appeared more extensively burned than other areas. However, Wiench's testimony also went beyond personal observations made at the scene, to his identifications of pour patterns in diagrams and photographs.

¶19 While we might well conclude in another case that identification of pour patterns by a firefighter crosses over into the realm of expert testimony, we do not so conclude under the circumstances presented here. As indicated above, Wiench had already testified without objection about pour patterns. ¶ 12. He then moved on to describe the areas of the apartment that appeared to him to be extensively burned. We have concluded that these statements were based upon personal observations. ¶ 18. The diagrams and photographs do no more than illustrate for the jury the areas of the apartment he observed, and to which he had already testified. Accordingly, and given Henderson's failure to object to the testimony concerning pour patterns, we conclude the court did not err in allowing Wiench to identify in the photographs and diagrams the pour patterns he had observed at the scene.

¶20 Finally, Henderson objected, on the basis of speculation, to testimony by Wiench that other tenants could have been endangered by this fire. The District Court overruled his objection and allowed Wiench to answer. Henderson makes passing reference to this ruling in one sentence in his Brief but presents no argument to support his contention that the District Court's ruling was erroneous, or that he was prejudiced thereby. Rule 23(a)(4), M.R.App.P., requires that an appellant present a concise, cohesive argument which "contain[s] the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and pages of the record relied on." We have repeatedly held that we will not consider unsupported issues or arguments. *In re Marriage of McMahon*, 2002 MT 198, ¶ 6, 311 Mont. 175, ¶ 6, 53 P.3d 1266, ¶ 6. Therefore, we decline to consider this argument.

¶21 For the foregoing reasons, we conclude the District Court did not abuse its discretion in ruling upon the firefighter's testimony.

¶22 *Were Henderson's due process rights violated at sentencing?*

¶23 Henderson presents no argument that the District Court's sentence was illegal. He argues exclusively that the State vindictively recommended a higher sentence at the sentencing hearing than it had offered previously. However, the record contains no documentation of the State's earlier offer. We cannot render a decision based exclusively on Henderson's unsupported allegations. Absent evidence corroborating his allegations or supporting his argument, we cannot address the merits of his claim. Rule 9(a), M.R.App.P., requires that a party seeking review of a judgment, order, or proceeding must present a record sufficient to enable us to rule on the issues raised. Henderson has failed to do so.

## CONCLUSION

¶24 For the foregoing reasons, we affirm.

/S/ PATRICIA O. COTTER

We Concur:

/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS

Chief Justice Karla M. Gray, dissenting.

¶25 I concur in portions of the Court's opinion, but not in other portions or in the result the Court reaches. I respectfully dissent from the Court's determination that Wiench's identifications of pour patterns in photographs and on the scene constituted lay testimony. Because it is my view that the District Court abused its discretion in admitting that testimony and the State has not satisfied its burden of establishing harmless error, I would reverse and remand for a new trial. Consequently, I would not address Henderson's final expert testimony-related objection, nor would I reach Issue 2.

¶26 Contrary to the Court's characterization in ¶ 19, Wiench did not merely "describe the areas of the apartment that appeared to him to be extensively burned" after Henderson's expert testimony-related objection. If the only testimony at issue were Wiench's affirmative responses to the prosecution's questions about "more extensively burned areas," it would be appropriate to characterize that testimony as lay testimony based on personal observations-- as the majority properly does with respect to Wiench's testimony after the earlier expert testimony-related objection in ¶ 16. However, as the Court acknowledges in ¶ 18, "Wiench's testimony also went beyond personal observations made at the scene, to his identifications of pour patterns in diagrams and photographs." Indeed, Wiench identified a pour pattern in what is presumably State's Exhibit 14 and opined that something "was dripped down underneath" the couch. He also reaffirmed his identification of that pour pattern with respect to the close-up picture, presented as State's Exhibit 8, and identified a separate pour pattern on the floor, as presented in State's Exhibit 9. In my view, Wiench's identifications and

11

specific descriptions of pour patterns differ from his testimony that some areas of the apartment appeared more burned than others and constitute expert opinion.

¶27 In determining whether the District Court abused its discretion in admitting Wiench's identifications of pour patterns as Rule 701, M.R.Evid., lay testimony based on its determination that Wiench was an "experienced, knowledgeable firefighter," it is appropriate to address the authorities advanced by the parties and our related jurisprudence. In my opinion, our cases on the issue of whether "official" personnel may testify as lay witnesses based on their training and experience are in disarray and require clarification for the purpose of guiding trial judges and attorneys in future civil and criminal cases on this increasingly confused subject. This need is highlighted by the Court's statement that in another case, "we might well conclude . . . that identification of pour patterns by a firefighter crosses over into the realm of expert testimony[.]" *See* ¶ 19. Therefore, I address the cases in turn.

¶28 In *Massman v. City of Helena* (1989), 237 Mont. 234, 242, 773 P.2d 1206, 1211, we concluded a firefighter's testimony based on "specialized, technical knowledge" was beyond the scope of Rule 701, M.R.Evid., lay testimony. Four years later, in *Hislop v. Cady* (1993), 261 Mont. 243, 249, 862 P.2d 388, 392, we concluded a police officer could testify about the cause of an accident based on his training and experience, but we did not specify whether that testimony was Rule 701, M.R.Evid., lay testimony or Rule 702, M.R.Evid., expert testimony. In *Onstad v. Payless Shoesource*, 2000 MT 230, ¶¶ 40-42, 301 Mont. 259, ¶¶ 40-42, 9 P.3d 38, ¶¶ 40-42, we relied exclusively on *Hislop* in determining law enforcement officers could testify as lay witnesses based on their training and experience.

12

¶29 In *State v. Nobach*, 2002 MT 91, ¶¶ 8-22, 309 Mont. 342, ¶¶ 8-22, 46 P.3d 618, ¶¶ 8-22, we determined a highway patrol officer's testimony regarding the effect of prescription medications on a criminal defendant's driving ability was expert opinion testimony requiring foundation, rather than lay testimony. In doing so, we observed that in *Hart-Anderson v. Hauck* (1989), 239 Mont. 444, 781 P.2d 1116, a civil case, we had not addressed Rule 701 or Rule 702, M.R.Evid., but our emphasis there on an officer's training and experience "suggest[ed] that we had in mind the foundational requirement of Rule 702" when we determined an officer had adequate foundation to testify about the cause of an accident. *Nobach*, ¶ 18. We also reasoned that *State v. Gregoroff* (1997), 287 Mont. 1, 951 P.2d 578, "'fills in the blanks' we left in *Hart-Anderson* by clarifying that a law enforcement officer can offer an expert opinion about the cause of an accident so long as sufficient foundation is presented, as required by Rule 702, M.R.Evid." *Nobach*, ¶¶ 19-20.

¶30 Similarly, in *Christofferson v. City of Great Falls*, 2003 MT 189, ¶¶ 35-49, 316 Mont. 469, ¶¶ 35-49, 74 P.3d 1021, ¶¶ 35-49, we determined a trial court properly excluded paramedics' lay opinions regarding the likelihood of a successful intubation because those opinions were "within the realm of expert testimony requiring foundation." In tracing our prior cases, we stated that, "[w]hile we did not expressly state in either *Hislop* or *Hart-Anderson* that the officers' testimony was properly admitted as expert testimony under Rule 702, as opposed to lay testimony under Rule 701, the language of those cases certainly supports that inference." *Christofferson*, ¶ 47. We distinguished *Onstad* on the basis that the officers in that case "were not offering scientific opinions," while "the paramedics [in *Christofferson*] were being called upon to do just that." *Christofferson*, ¶ 49.

13

¶31 Approximately a year later, in *State v. Frasure*, 2004 MT 305, ¶¶ 17-18, 323 Mont. 479, ¶¶ 17-18, 100 P.3d 1013, ¶¶ 17-18, we concluded police officers' training and experience "provided a sufficient foundation for them to provide lay opinion testimony as to whether it was likely that [the criminal defendant] possessed the drugs with intent to sell." We relied exclusively on *Onstad* and *Hislop* in doing so.

¶32 As this recitation demonstrates, two lines of cases have developed with respect to whether "official" personnel may testify as lay witnesses about scientific, technical or other specialized knowledge, based on their training and experience. One line of cases, consisting of *Frasure* and *Onstad*, holds that training and experience may form a basis for an "official" person's Rule 701, M.R.Evid., lay testimony. The other line, consisting primarily of *Christofferson*, *Nobach* and *Massman*, holds that testimony based on training and experience conveying scientific, technical or specialized knowledge offered to assist the trier of fact is Rule 702, M.R.Evid., expert testimony. I believe we are obligated to rectify this situation as we have done with some frequency in recent years when parallel lines of authority have come to our attention. *See, e.g.*, *Quantum Electric, Inc. v. Schaeffer*, 2003 MT 29, ¶¶ 16-30, 314 Mont. 193, ¶¶ 16-30, 64 P.3d 1026, ¶¶ 16-30; *In re Estate of Bradshaw*, 2001 MT 92, ¶¶ 14-16, 305 Mont. 178, ¶¶ 14-16, 24 P.3d 211, ¶¶ 14-16.

¶33 The plain language of Rule 702, M.R.Evid., and our recognition in *Christofferson* that *Hislop* was almost certainly an expert testimony case lead me to conclude that testimony based on a "foundation" of training and experience is expert testimony under Rule 702, M.R.Evid., when that testimony involves "scientific, technical, or other specialized knowledge [that] will assist the trier of fact." I would overrule *Frasure*, *Onstad* and any

14

other cases to the extent they state "training and experience" may form a basis for lay testimony. As a result, I would also conclude the District Court in the present case was incorrect in reasoning that training and experience may form a basis for lay testimony.

¶34 Turning to Wiench's identifications of pour patterns over Henderson's expert testimony-related objection, I first observe Rule 701, M.R.Evid., limits lay testimony to opinions or inferences rationally based on the witness' perception. In *Nobach*, ¶¶ 15-17, we reasoned an officer could not offer lay opinion testimony about the effects of prescription drugs on a person's driving ability because, while most adults can recognize indications of alcohol intoxication, we were "not persuaded that lay people are sufficiently knowledgeable about common symptoms of drug consumption, much less the effects of drug consumption on a person's ability to drive a motor vehicle safely, to offer lay opinion testimony on those subjects, based on personal observations, under Rule 701." Similarly, here I am not persuaded that a lay person is sufficiently familiar with the concept of a pour pattern to identify one on the scene or in a photograph.

¶35 Moreover, I do not agree with the Court that Wiench's "unobjected to" general description of a pour pattern, as set forth in ¶ 12, is dispositive in this regard. The question is not whether the jury, after hearing the description, could infer the presence of pour patterns based on photographs and testimony regarding personal perceptions. The question is whether Wiench's actual identification of pour patterns is an expert opinion, as opposed to lay testimony based on personal observations and reasonable inferences therefrom.

¶36 In this respect, I wholeheartedly agree with the Court's observation in ¶ 19 that the photograph exhibits "do no more than illustrate for the jury the areas of the apartment

15

[Wiench] observed[.]" Indeed, I do not believe an unassisted lay person could identify the pour patterns Wiench identified in the photographs--even in light of his unchallenged general description of a pour pattern. The fact that the pour patterns are not obvious in the pictures further buttresses my view that Wiench's testimony is not based solely on his personal observations and reasonable inferences therefrom, as contemplated by Rule 701, M.R.Evid.

¶37    Rule 702, M.R.Evid., defines expert testimony, in part, as "scientific, technical, or other specialized knowledge" that will "assist the trier of fact to understand the evidence" and requires that only a witness qualified by "knowledge, skill, experience, training, or education may testify thereto[.]"  In my view, Wiench's identifications of pour patterns at the scene and in the photographs went well beyond lay testimony, and constituted scientific, technical or other specialized knowledge offered to assist the jury in understanding that the photograph exhibits depicted pour patterns.  Furthermore, based on Wiench's affirmative answer when asked if a pour pattern "leaves a specific kind of burn damage, based upon the fires you've worked," I believe Wiench's experience as a firefighter--not merely his personal observations--enabled him to recognize and identify pour patterns and qualified him to testify about them.  Thus, I would conclude Wiench's identifications of pour patterns fall squarely within the definition of Rule 702, M.R.Evid., expert testimony, and could only be admitted as such.  Because the State expressly stated it was not offering Wiench's testimony as expert testimony, I would hold the District Court abused its discretion in admitting the testimony as lay testimony.

¶38    Finally, it is critical to address the State's contention that any error in this case--which I conclude occurred--was harmless because no prejudice resulted.  The State correctly points

16

to the harmless error analysis we first set forth in *State v. Van Kirk*, 2001 MT 184, 306 Mont. 215, 32 P.3d 735.

¶39　　In *Van Kirk*, ¶¶ 34-43, we abandoned the "overwhelming evidence" test once applied in determining whether errors were harmless.　We did so because that test was a "'scorecard' analysis" that focused on the quantity rather than the quality of the evidence, created "an unpredictable and subjective framework," and could have the "unintended consequence of inviting the State to offer inadmissible yet damaging evidence in a strong case, even if by happenstance, since the worst that can happen is that the error is noted but deemed harmless."　*Van Kirk*, ¶¶ 34-35.

¶40　　In place of the "overwhelming evidence" test, we adopted--as the State correctly posits--a two-step analysis for determining whether error is harmless or reversible.　The first step is to determine whether the error is structural or trial error.　*Van Kirk*, ¶ 37.　Structural error "is typically of constitutional dimensions, precedes the trial, . . . undermines the fairness of the entire proceeding" and requires automatic reversal.　*Van Kirk*, ¶¶ 38-39.　Trial error "typically occurs during the presentation of a case to the jury" and "is amenable to qualitative assessment . . . for prejudicial impact relative to the other evidence introduced at trial."　*Van Kirk*, ¶ 40.　If the error is trial error, the analysis proceeds to the second step, which is to determine whether the State has demonstrated the error was not prejudicial under the circumstances.　*Van Kirk*, ¶¶ 41-42.　Under this step, the State first "must direct us to admissible evidence that proved the same facts as the tainted evidence" if it is possible to do so.　*See Van Kirk*, ¶¶ 44-45.　If the State directs us to cumulative evidence regarding an element of the offense or the tainted evidence does not go toward an element, the State then

17

must demonstrate, qualitatively and by comparison to the admissible evidence, that there is no reasonable possibility that the tainted evidence might have contributed to the conviction. *Van Kirk*, ¶¶ 44, 47.

¶41 The State asserts the admission of Wiench's testimony occurred during the presentation of evidence and, therefore, is trial error. It then recites its burdens under *Van Kirk*, and asserts the photographs and other witnesses' testimony constitute cumulative, admissible evidence regarding the mental state element of arson. It does not, however, discuss whether Henderson was prejudiced with regard to any aspect of the burglary or criminal endangerment charges, nor does it address the "qualitative" aspect of *Van Kirk* in relation to any charge, including the arson charge.

¶42 I agree with the State that the admission of Wiench's identification of pour patterns constitutes trial error and, therefore, I would proceed to the next step of the analysis and determine whether the State has demonstrated the error was not prejudicial. *See Van Kirk*, ¶¶ 41-42. Even assuming *arguendo* that the State has met its burden of directing us to cumulative, admissible evidence establishing Henderson acted purposely or knowingly, I would conclude the State has utterly failed--indeed, has not even attempted--to meet its burden of demonstrating, qualitatively and by comparison to the admissible evidence, that there was no reasonable possibility that Wiench's tainted testimony might have contributed to Henderson's arson conviction. I would further conclude, under the circumstances of this case and absent contrary argument from the State, that the abuse of discretion in admitting Wiench's testimony was also prejudicial with respect to the burglary and criminal endangerment charges.

18

¶43    I dissent from the Court's conclusion that the testimony at issue was lay testimony. I also dissent from the Court's total failure to address our jurisprudence on this important issue. I would reverse and remand this case for a new trial on the arson, burglary and criminal endangerment charges.

/S/ KARLA M. GRAY